Richard C. HUGHES;  Joan C. Hughes,
Plaintiffs–Appellants,

v.

UNITED STATES of America;  Commissioner of Internal Revenue,
Defendants–Appellees.

Richard C. HUGHES;  Joan C. Hughes,
Plaintiffs–Appellants,

v.

COMMISSIONER OF IRS;  United States of America;  Steven R. High;  Lena High;  United Savings Bank, Defendants–Appellees.

Nos. 90–56150, 91–55195.

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 2, 1991 *.

Decided Jan. 9, 1992.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Richard C. Hughes and Joan C. Hughes, pro se.

Gary R. Allen, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Before PREGERSON, CANBY and RYMER, Circuit Judges.

RYMER, Circuit Judge:

Richard and Joan Hughes, in an effort to forestall any further tax collection activities against them, brought suit against the United States and the Commissioner of Internal Revenue seeking declaratory and injunctive relief and damages. The district court dismissed the counts seeking declaratory and injunctive relief on the ground that the court lacked subject matter jurisdiction, and granted summary judgment in favor of the government and the Commissioner on the damage claims.

Among other things, the Hugheses contend on appeal that the district court had subject matter jurisdiction despite the Anti–Injunction Act, 26 U.S.C. § 7421, because Form 4340 does not constitute proof that assessments were made and thus no valid assessments against them exist, and because the IRS failed to present any evi-

dence that it mailed notices of assessments and demands for payments. They further argue that the Secretary of the Treasury failed to delegate his authority to collect taxes to local IRS agents. Alternatively, the Hugheses assert that the district court had jurisdiction under the Administrative Procedure Act, notwithstanding the jurisdictional limitations imposed by the Anti-Injunction Act and 28 U.S.C. § 2201. They also claim that jurisdiction was proper under 28 U.S.C. § 2410 because this suit is really an action to quiet title.

Additionally, the Hugheses make several evidentiary challenges, including the contentions that the IRS's Office of the Los Angeles District Director does not legally exist and thus all forms issuing from that office are inadmissible, and that 4340 Forms are inadmissible because they are hearsay, they are unacceptable summaries, they were generated by a computer, and they were not legitimately certified under government seal. Finally, the Hugheses claim that the district court erred by refusing to allow the addition of new parties in the first amended complaint, and that the district court erred in several respects when it granted summary judgment in favor of the government. We affirm.

## I. *Background*

The IRS determined that the Hugheses were liable for tax deficiencies for the year 1981. The IRS provided notice of the deficiencies and demanded payment, but the Hugheses did not satisfy the debt. The IRS then levied upon and, in 1985, sold property owned by the Hugheses in order to satisfy a portion of the still outstanding liabilities.

The IRS also determined that the Hugheses were liable for additional deficiencies for the years 1979–1984. Once again, the IRS provided the Hugheses with the requisite notices of assessment and demands for payment. To satisfy these liabilities, the IRS garnished the Hugheses' wages.

In May 1990, the Hugheses filed suit against the United States, the Commission-

er of Internal Revenue, and "Does 1–10," seeking declaratory and injunctive relief and damages. The Hugheses subsequently filed a first amended complaint that attempted to add three new defendants— Steven High, Lena High, and the United Savings Bank, the current owners of the house that the IRS had taken from the Hugheses in partial satisfaction of their tax debt.

The gravamen of counts I–V of the first amended complaint was that the IRS had wrongfully seized the Hugheses' property and wages in the attempt to satisfy their still outstanding tax liabilities. The Hugheses sought declaratory relief in the form of a determination that the IRS's garnishment of wages and seizure of property was illegal. They also framed this portion of their complaint as an action to quiet title; they sought a declaration that they were the owners of the property which the IRS had "illegally" levied upon and sold. Finally, the Hugheses sought to enjoin the IRS from any future tax collection activities with regard to the tax liabilities at issue.

Counts VI–VIII sought damages based on alleged unauthorized disclosure by the IRS of information about the Hugheses, violation by the IRS of the Hugheses' state privacy rights, and intentional misrepresentation of records maintained by the IRS.

On July 25, 1990, the district court dismissed with prejudice counts I–V (seeking declaratory and injunctive relief) and count VII (the state law claim).[1] The court found that, pursuant to the Anti-Injunction Act, 26 U.S.C. § 7421, it lacked subject matter jurisdiction over those counts. The district court also found that the damage claims were jurisdictionally defective because the Hugheses had made no showing that the United States had waived its sovereign immunity, and because they had not shown compliance with the administrative prerequisites of the Federal Tort Claims Act. The court, however, permitted the Hugheses to file a second amended complaint as to these counts. Finally, the district court

---

1. On appeal, the Hugheses do not challenge the    dismissal of the state law claim.

refused to allow the addition of the new defendants, the Highs and the United Savings Bank.

On November 26, 1990, the district court granted summary judgment in favor of the government on all the claims presented in the second amended complaint. The court determined that, as a matter of law, all collection actions taken by the IRS, and all disclosures of tax return information occurring in connection with such collection actions, were authorized by law.

The Hugheses now appeal both the dismissal of their declaratory and injunctive relief claims, and the grant of summary judgment in favor of the government on the damages claims.

## II. *Jurisdiction*

### A. Injunctive and Declaratory Relief

In counts I–V of their complaint, the Hugheses sought both declaratory and injunctive relief against the United States. The district court granted the government's motion to dismiss, finding that the court lacked subject matter jurisdiction over these counts. The Hugheses contend on appeal that the district court in fact did have jurisdiction.

The existence of subject matter jurisdiction is a question of law reviewed de novo. *Kruso v. International Tel. & Tel. Corp.,* 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). The district court's factual findings on jurisdictional issues must be accepted unless clearly erroneous. *Stock West, Inc. v. Confederated Tribes of the Colville Reservation,* 873 F.2d 1221, 1225 (9th Cir.1989). We conclude that the district court properly dismissed these counts.

### 1. *26 U.S.C. § 7421*

The Anti–Injunction Act (the Act) provides that, with certain exceptions, "no suit for the purpose of restraining the assessment or collection of any tax shall be main-

tained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a).

The Hugheses argue that their request for injunctive relief falls within the judicial exception to the Act. To avail themselves of this exception, the Hugheses bear the burden of demonstrating that "(1) under no circumstances can the government ultimately prevail on the merits; and (2) the taxpayer will suffer irreparable injury without injunctive relief." *Elias v. Connett,* 908 F.2d 521, 525 (9th Cir.1990).

■ In an attempt to establish the first prong of the *Elias* exception, the Hugheses first argue that the IRS failed to make a valid assessment against them so that all current IRS actions to collect from them are unlawful. Thus, the Hugheses argue, the IRS could never succeed on the merits of its claim. We reject this argument.

The IRS submitted Certificates of Assessments and Payments (Form 4340) as proof that assessments had been made. Official certificates, such as Form 4340, can constitute proof of the fact that the assessments actually were made. *See United States v. Zolla,* 724 F.2d 808, 810 (9th Cir.) (postal form 3877 certifying mailing of deficiency notices and an IRS form certifying that taxes and failure-to-pay penalties had been assessed are "official certificates" that "are highly probative, and are sufficient, in the absence of contrary evidence, to establish that the notices and assessments were properly made"), *cert. denied,* 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984); *United States v. Chila,* 871 F.2d 1015, 1017–18 (11th Cir.) (Certificate of Assessments and Payments is presumptive proof of a valid assessment), *cert. denied,* 493 U.S. 975, 110 S.Ct. 498, 107 L.Ed.2d 501 (1989).[2] Because Form 4340 is an official document which establishes that assessments were made, and because the Hugheses have presented no contrary evidence indicating that assessments were not made, the Hugheses' argument fails.

---

**2.** The Hugheses also present several evidentiary challenges to the admissibility of these forms.

We discuss evidentiary issues *infra* Part III.

■ The Hugheses next argue that the IRS cannot prevail because the IRS did not present any evidence that it mailed notice of assessments and demands for payment as required by 26 U.S.C. § 6303(a). We reject this argument because the Hugheses received numerous final notices (notices of intention to levy) as well as notices of deficiencies, notices of liens, a notice of levy, a notice of sealed bid sale, and a notice of garnishment. These notices satisfied the requirements of § 6303(a) by informing the Hugheses of the amount owed and by requesting payment. These numerous notices were sufficient because "[t]he form on which a notice of assessment and demand for payment is made is irrelevant as long as it provides the taxpayer with all the information required under 26 U.S.C. § 6303(a)." *Elias*, 908 F.2d at 525.

■ Next, the Hugheses claim that the IRS cannot prevail because there is "no evidence of any delegated authority from the Secretary of Treasury to the various known or unknown agents involved." Relevant statutes and regulations demonstrate, however, that the Secretary does have the power to collect taxes, and that such power can be delegated to local IRS agents. 26 U.S.C. § 6301 provides that "[t]he Secretary shall collect the taxes imposed by the internal revenue laws." The actual task of collecting the taxes, however, has been delegated to local IRS directors. "The taxes imposed by the internal revenue laws shall be collected by district directors of internal revenue." 26 C.F.R. § 301.6301–1. District directors in turn are authorized to redelegate the levy power to lower level officials such as collection officers. *See* IRS Delegation Order 191. The delegation of authority down the chain of command, from the Secretary, to the Commissioner of Internal Revenue, to local IRS employees constitutes a valid delegation by the Secretary to the Commissioner, and a redelegation by the Commissioner to the delegated officers and employees. *See* 26 C.F.R. § 301.7701–9. Therefore, the agents involved in the case at bar were acting within their authority when they collected taxes from the Hugheses.

Finally, the Hugheses claim that the IRS's claim is improper because Joan Hughes' debt has already been paid off. This claim fails because the Hugheses have presented no evidence indicating that the IRS assessments are incorrect or that all of Joan Hughes' debts have been paid.

■ Thus, the Hugheses have not met their first burden under the judicial exception to the Act of demonstrating that the government could not prevail on the merits. While that failure alone is sufficient to defeat jurisdiction, the Hugheses also have failed to satisfy the second prong of the judicial exception. They have not shown that they will suffer irreparable harm without injunctive relief. The Hugheses argue that they will be harmed in two ways: they will suffer financially and their due process rights will be violated. These allegations are insufficient. First, the claim of mere financial hardship does not establish irreparable harm. *See Elias*, 908 F.2d at 526 (irreparable harm not established when plaintiff "has failed to show that he will suffer more than mere monetary harm or financial hardship if denied relief"). Second, the Hugheses presented no evidence of any due process violation. The Hugheses are claiming that the IRS's collection procedures violated due process because the agents did not follow the requisite statutory procedures. As previously indicated, however, the IRS in this case followed all the required procedures. The IRS provided the Hugheses with the required notices of assessment, and all the agents acted in accordance with their properly delegated authority. The Hugheses have not presented any evidence of procedural irregularities sufficient to establish a constitutional violation, and thus the district court did not err in rejecting their claim of irreparable harm.

### 2. *28 U.S.C. § 2201*

■ The district court's exercise of jurisdiction also was barred by 28 U.S.C. § 2201. That section provides the district court with jurisdiction over cases seeking declaratory relief. A specific exception ex-

ists, however, for disputes "with respect to Federal taxes." Because the case at bar involves federal taxes, the district court once again was correct in refusing to exercise jurisdiction.[3]

### 3. *5 U.S.C. § 702*

█ The Hugheses argue in the alternative that the district court had jurisdiction over this case pursuant to the judicial review provision of the Administrative Procedure Act, 5 U.S.C. § 702. We reject this claim.

Section 702 waives the government's sovereign immunity, and thus permits the exercise of jurisdiction, in actions seeking non-monetary relief with respect to agency action. The section, however, also creates an exception to the waiver of immunity.

> Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702. Both 26 U.S.C. § 7421 and 28 U.S.C. § 2201 are statutes that, in this case, expressly forbid the relief which is sought by the Hugheses. Legislative history confirms the conclusion that the limited waiver of 5 U.S.C. § 702 does not override the limitations of § 7421 and § 2201. "Statutory or rule provisions denying authority for injunctive relief (*e.g.,* the Anti–Injunction Act, 26 U.S.C. section 7421, and 28 U.S.C. section 2201, prohibiting injunctive and declaratory relief against collection of federal taxes) ... remain unchanged [by § 702]." H.R.Rep. No. 94–1656, 94th Cong., 2d Sess. 12, *reprinted in* 1976 U.S.Code Cong. & Admin.News, 6121, 6132–33 [hereinafter H.R.Rep. No. 94–1656]. Section 702 therefore does not confer jurisdiction over the Hugheses' claim.

The Hugheses present two arguments as to why the Anti–Injunction Act and 28 U.S.C. § 2201 do not fall within the exception to § 702. First, they claim that because "the Anti–Injunction Act does not by any means 'grant consent to suit', it simply does not come within the meaning of the language of [5 U.S.C. § 702]." Even if the Anti–Injunction Act is not a grant of consent to suit under clause 2 of the exception to § 702, however, it still is an "other limitation on judicial review," under clause 1 of the exception. The Anti–Injunction Act is therefore a jurisdictional bar. Furthermore, the legislative history specifically indicates that the Anti–Injunction Act falls within the clause 1 exception to § 702. *See* H.R.Rep. No. 94–1656, *supra,* at 12.

The Hugheses also argue that 28 U.S.C. § 2201 does not create an exception to the general waiver of immunity under § 702. They claim that § 2201 only operates to bar suits involving federal taxes, but that their suit actually is a due process action, not a tax-based action. This is a recharacterization of the action that we decline to accept. *See supra* note 3.

5 U.S.C. § 702, therefore, does not create jurisdiction in the district court to adjudicate the Hugheses' action.

### B. Quiet Title

█ The Hugheses argue that, because their action is actually a request to quiet title, the district court had jurisdiction pursuant to 28 U.S.C. § 2410. In essence, the Hugheses are claiming that, because this is a quiet title action, any potential jurisdictional bar to declaratory or injunctive relief, such as 26 U.S.C. § 7421 or 28 U.S.C. § 2201, does not apply in this case.

28 U.S.C. § 2410(a) states in relevant part that "the United States may be named a party in any civil action or suit in any district court ... to quiet title to ... real or personal property on which the United States has or claims a mortgage or other

---

**3.** The Hugheses argue that § 2201 does grant consent to suit in this case because this case "is about *due process,* with federal taxes being merely a secondary issue." This assertion is disingenuous. The Hugheses have brought suit to stop the IRS from their tax collection activities against them. The real issue here is not due process, but whether the Hugheses have to pay their taxes.

lien." This section waives sovereign immunity and vests the district court with jurisdiction to consider matters falling within the scope of the statute. *See Arford v. United States,* 934 F.2d 229, 234 (9th Cir. 1991). We, however, have strictly limited the reach and application of this statute.

Under 28 U.S.C. § 2410, the United States may be joined as a party to a quiet title action affecting property upon which it claims a lien. A taxpayer may not use a section 2410 action to collaterally attack the merits of an assessment. Rather, the taxpayer may only contest the procedural validity of a tax lien.

*Elias,* 908 F.2d at 527 (citations and footnote omitted); *see also Arford,* 934 F.2d at 232.

To the extent that the Hugheses are attempting to challenge the merits of the assessment, jurisdiction is lacking under § 2410. Therefore, the Hugheses' broad claims that the tax deficiencies are null and void, and that no lawful assessments even exist, are jurisdictionally barred. *See Elias,* 908 F.2d at 527.

▮ The Hugheses, however, attempt to attack the procedural validity of the IRS's liens by arguing that there was "no evidence of any notice and demand having been mailed under 26 U.S.C. 6303(a)." The Hugheses also appear to attack the procedural validity of the liens by referring to "procedural lapses in an assessment under 26 U.S.C. § 6203." 26 U.S.C. § 6203 requires, as a procedural matter, that a taxpayer be furnished with a copy of his assessment record if he so requests. We reject these arguments for several reasons.

▮ First, while a taxpayer may contest the procedural validity of a tax lien under § 2410, he may do so only if, at the time the action is commenced, the government still claims a lien or a mortgage on the property. If the government has sold the property prior to the filing of the suit, and no longer claims any interest in the property, § 2410 does not apply. *See, e.g., Goodwin v. United States,* 935 F.2d 1061, 1063–64 (9th Cir.1991) (taxpayer permitted to bring action to quiet title under § 2410(a)(1)

even though government had already sold property to third party because taxpayer had filed lis pendens *prior* to recording of quitclaim deed that was issued to third party); *Kulawy v. United States,* 917 F.2d 729, 733–34 (2d Cir.1990) (court had jurisdiction over § 2410 quiet title action, even though government had sold property, because government still had lien on property at time suit was commenced) (citing *Bank of Hemet v. United States,* 643 F.2d 661, 665 (9th Cir.1981)). Similarly, such an action is jurisdictionally barred if, at the time it is commenced, the government claims a title interest rather than a lien interest. *See, e.g., Bertie's Apple Valley Farms v. United States,* 476 F.2d 291, 292 (9th Cir. 1973).

Therefore, the district court lacked jurisdiction under § 2410 to evaluate the procedural validity of the tax liens that had been placed on the real property (such as the house that the Highs now own) which the government had sold prior to the commencement of this action. Jurisdiction also is lacking on any claims relating to personal property, such as previously garnished wages, in which the government now claims a title interest, instead of a mere lien interest. The practical upshot is that the Hugheses can only use § 2410 to challenge the continued collection of taxes through the garnishment of their wages.

▮ Second, the Hugheses' procedural attack based on the IRS's alleged failure to send notices of assessment and demand for payment under 26 U.S.C. § 6303(a) is insufficient to support a claim under § 2410. The district court found that "the Internal Revenue Service properly gave notice to the plaintiffs of the taxes due and requested payment of the amounts due." Evidence of numerous notices supports the district court's conclusion. *See supra* Part II(A)(1). Therefore, while the Hugheses did properly allege a procedural defect, the district court properly found that no such defect existed. As a result, the Hugheses' § 2410 claim fails. *See Elias,* 908 F.2d at 527–28 (allegation of IRS's failure to follow § 6303(a) procedures did not support § 2410 claim because evidence demonstrat-

ed that requirements of § 6303(a) were satisfied).

Finally, the Hugheses' allegation that the IRS never furnished them with a copy of the record of assessment after being requested to do so also is insufficient to support a claim under § 2410. 26 U.S.C. § 6203 requires that the Secretary provide a taxpayer with a copy of the record of assessment if requested to do so. The Hugheses, however, have presented no evidence that, at the time the various assessments were being made, they ever requested a copy of the record of assessment. Because the Hugheses presented no evidence that they made such a request, they cannot now argue that the IRS failed to follow statutory procedures by neglecting to provide the Hugheses with the required copy.[4] The Hugheses' § 2410 claim fails, therefore, because of the absence of any evidence that the IRS's tax liens were procedurally defective.[5]

### III. *Admissibility of Evidence*

The Hugheses make several evidentiary challenges to the admissibility of the 4340 Forms (the Forms). Evidentiary decisions "are reviewed for abuse of discretion and will not be reversed absent prejudice." *Roberts v. College of the Desert*, 870 F.2d 1411, 1418 (9th Cir.1988).

The Hugheses first argue that the Forms purport to come from the Office of the Los Angeles District Director, but that such an office has not been recognized by the Treasury Department, and thus that the office does not even exist. According to the Hugheses, the Los Angeles office can only be recognized if the Treasury Department publishes its location and authority in the Federal Register pursuant to the Administrative Procedure Act, 5 U.S.C. § 552(a)(1). This argument lacks merit. Section 552(a)(1) does not require the publication of internal delegations of administrative authority to enforce the Internal Revenue laws. *See, e.g., Lonsdale v. United States*, 919 F.2d 1440, 1446 (10th Cir.1990). Thus, the Treasury Department is not obligated to publish an order creating a branch office or internally delegating authority to that office.

The Hugheses next argue that the Secretary never delegated the authority to complete the Forms that were submitted to the district court in this case. As we have held, the Secretary has properly delegated his authority to regional and local IRS officers. *See supra* Part II(A)(1).

The next argument put forth by the Hugheses is that the Forms are inadmissible hearsay evidence that do not fall within either the "records of regularly conducted activity" (business records) exception, Fed.R.Evid. 803(6), or the "public records and reports" exception, Fed.R.Evid. 803(8). They also argue that the Forms are summaries that are inadmissible under Fed.R.Evid. 1006 because neither the originals nor duplicates of the original assessment documents have been made available. These arguments are unpersuasive.

First, Certificates of Assessments and Payments qualify as "[r]ecords, reports, ... or data compilations, in any form, of public offices or agencies, setting forth ... matters observed pursuant to duty imposed by law as to which matters there was a duty to report," thus meeting one of the definitions of public records set forth in Fed.R.Evid. 803(8). *Cf. United States v.*

---

**4.** Actually, the Hugheses do not even assert that they requested a copy of the record of assessment at the time the assessments were being made. Rather, they argue that the IRS failed to provide the record after the Hugheses requested a copy during discovery pertaining to this litigation. Even if supported by evidence, this allegation shows only a potential discovery violation; it does not show a procedural defect in the IRS's tax lien sufficient to vest the district court with jurisdiction under § 2410.

**5.** The Hugheses also assert that the district court had jurisdiction pursuant to general jurisdiction statutes such as 28 U.S.C. §§ 1331 and 1340. These general jurisdictional statutes cannot, however, waive the government's sovereign immunity. *See, e.g., Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir.1985); *Lonsdale v. United States*, 919 F.2d 1440, 1443–44 (10th Cir.1990). A mere assertion that general jurisdictional statutes apply does not suffice to confer jurisdiction when, as in this case, the government did not waive its immunity.

*Neff,* 615 F.2d 1235, 1241–42 (9th Cir.) (Certificate admissible under Rule 803(10) "absence of public record" exception to prove nonoccurrence of Neff's tax returns), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980).

■ Second, the Hugheses' reliance on Rule 1006 is misplaced. That rule by its terms applies when a party is not attempting to have real evidence received, but instead is attempting to introduce a summary of that evidence. We have stated, however, that official documents—such as IRS forms—are probative evidence in and of themselves and, in the absence of contrary evidence, are sufficient to establish that notices and assessments were properly made. *See Zolla,* 724 F.2d at 810. Because the Forms are not merely a summary record of the proof, but are themselves proof that assessments were made, Rule 1006 does not render them inadmissible.

The Hugheses' next argument is that the Forms are not evidence of valid assessments and that no such evidence exists. As we have held, the Forms are admissible evidence that valid assessments have been made. *See supra* Part II(A)(1).

■ The Hugheses next contend that the Forms were inadmissible because they were generated by a computer, and the government did not lay the foundation necessary for the admission of such computerized evidence. We reject this argument because this circuit as well as other circuits have held that official IRS documents, even if generated by a computer, are admissible as public records. *See, e.g., Neff,* 615 F.2d at 1241–42 (IRS Certificate of Assessments and Payments, which was "the product of systematized data storage and retrieval by a public agency charged with the responsibility of maintaining accurate financial and tax information," was admissible under Rule 803(10) absence of public record hearsay exception); *United States v. Farris,* 517 F.2d 226, 227–29 (7th Cir.) (self-authen-

ticated computer print-outs of defendant's tax records certified by Secretary of the Treasury were admissible public records), *cert. denied,* 423 U.S. 892, 96 S.Ct. 189, 46 L.Ed.2d 123 (1975). Because the IRS Forms are data compilations that are admissible as public records, the district court did not err when it received the Forms into evidence, despite the fact that the Forms may have been generated by a computer.

■ The Hugheses final argument on admissibility is that the Forms were not legitimately certified under government seal. The IRS used Form 2866, "Certificate of Official Record," to certify the authenticity of the Forms.[6] According to the Hugheses, such certification is improper because there is no Federal Record Center in Los Angeles, the alleged location at which the Forms were prepared. They argue that Form 2866 can only be used to certify documents in a Federal Record Center, and because there is no such center in Los Angeles, the Forms in this case were never legally certified.

We reject this argument. The Forms are admissible as self-authenticating domestic public documents under Fed.R.Evid. 902(1) because they were certified under seal. The use of Form 2866, instead of some other certification form, does not negate the fact that the Forms are themselves deemed to be authentic under Rule 902(1). Also, the Hugheses have presented no evidence of any sort to support their contention that Form 2866 cannot be used to certify Form 4340. As long as the document is under seal and bears an appropriate signature, Rule 902(1) is satisfied, regardless of which certifying form actually is used.

## IV. *Addition of New Parties*

The Hugheses next argue that the district court erred in refusing to allow the Hugheses, pursuant to Fed.R.Civ.P. 19, to name Steven High, Lena High, and the

---

**6.** The Hugheses, relying on the Catalog of Federal Tax Forms, Form Letters, Notices, and Taxpayer Information Publications, claim that Form 2866 is a "Certification of Documents on File in a Federal Record Center." The actual document in question, however, merely purports to be a "Certificate of Official Record." To the extent that the Hugheses' argument hinges on the name of the document, their claim lacks merit.

United Savings Bank (USB) as additional parties in the first amended complaint. A district court's decision concerning joinder pursuant to Rule 19 is generally reviewed for an abuse of discretion. *Northern Alaska Envtl. Ctr. v. Hodel,* 803 F.2d 466, 468 (9th Cir.1986); *Aguilar v. Los Angeles County,* 751 F.2d 1089, 1092 (9th Cir.), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985). But, to the extent that the determination of whether the movant's interest is impaired under the rule involves an interpretation of law, it is reviewed de novo. *Id.*

The Hugheses claim that the Highs and the USB were necessary parties, and joinder was therefore mandated under Rule 19(a).[7] The Hugheses argue that Rule 19 applies because "complete relief against the adverse interest claims of the parties to the real property in this action could not be accorded without the joinder of all parties claiming an interest therein."

The Hugheses' claim is misplaced. As a preliminary matter, we note that all of the counts of the complaint alleged wrongdoing on the part of the IRS; the Hugheses never made any additional allegations against the Highs or the USB.

As we have held, the district court properly determined that it lacked subject matter jurisdiction over counts I–V of the amended complaint. Because the court lacked jurisdiction, it did not err in declining to permit the joinder of additional parties. The parties cannot be deemed necessary if the court lacks subject matter jurisdiction over the entire action.

Finally, counts VI–VIII seek damages against the IRS for unauthorized disclosure of return information, violation of state privacy rights, and intentional misrepresentation of records. These allegations are totally unrelated to the new defendants. These claims could be adjudicated and complete relief could be accorded to all the interested parties without involving the Highs or the USB.

## V. *Summary Judgment*

In their second amended complaint, the Hugheses seek damages for alleged unauthorized disclosure by the IRS of information about them and intentional misrepresentation of records maintained by the IRS. The district court granted summary judgment in favor of the government and the Hugheses appeal that decision.

The district court's grant of summary judgment is reviewed de novo. *Kruso,* 872 F.2d at 1421; *State Farm Fire & Casualty Co. v. Martin,* 872 F.2d 319, 320 (9th Cir. 1989). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire & Casualty Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989); *Judie v. Hamilton,* 872 F.2d 919, 920 (9th Cir.1989).

Fed.R.Civ.P. 56 establishes the procedural framework for summary judgment motions. A defending party, such as the government in this case, may move for summary judgment with or without supporting affidavits. Fed.R.Civ.P. 56(b). The moving party

> bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

After the moving party has met its initial burden,

> Rule 56(e) ... requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific

---

7. The Hugheses also claim that joinder was appropriate under Fed.R.Civ.P. 20(a) (Permissive Joinder). Just as the following analysis will indicate that joinder was not mandated under Rule 19(a), so too was joinder not required under Rule 20.

facts showing that there is a genuine issue for trial."

*Id.* at 324, 106 S.Ct. at 2553.

According to the Central District of California's Local Rule 7.10, which applies to all motions (including a motion for summary judgment), "[f]ailure of any counsel to appear, unless excused by the Court in advance pursuant to Local Rule 7.11 or otherwise, may be deemed consent to a ruling upon the motion adverse to that counsel's position."

Given this framework, the district court's grant of summary judgment was proper. First, the Hugheses (who are representing themselves) failed to appear at the hearing on the motion for summary judgment, and they never received the court's permission not to appear. Under Local Rule 7.10, this failure to appear can be deemed consent to an adverse ruling. The Hugheses cannot now complain about the correctness of the grant of summary judgment when, by their own actions, they already have consented to that adverse ruling. *Cf. Yusov v. Yusuf,* 892 F.2d 784, 787 (9th Cir.1989) (affirming magistrate's ruling under Local Rule 7.9, which states that required papers not filed in a timely manner will not be considered and that failure to file may be deemed consent to an adverse ruling).

■ The district court, in any event, properly granted summary judgment because the Hugheses failed to present any evidence demonstrating that there were genuine issues for trial. The Hugheses merely alleged, without any supporting evidence, that the disclosure of tax information about Richard Hughes to his employer was an unauthorized disclosure.

As the Hugheses point out, under 26 U.S.C. § 7431(a)(1), taxpayers can sue the government when a government employee knowingly or negligently discloses any return information in violation of 26 U.S.C. § 6103. Certain limited disclosures are permissible, however. 26 C.F.R. § 301.-6103(k)(6)–1(b)(6) authorizes the disclosure of return information in order

[t]o establish or verify the financial status or condition and location of the taxpayer against whom collection activity is or may be directed, to locate assets in which the taxpayer has an interest, to ascertain the amount of any liability described in subparagraph (3) of this paragraph to be collected, or otherwise to apply the provisions of the Code relating to establishment of liens against such assets, or levy on, or seizure, or sale of, the assets to satisfy any such liability. . . .

The government offered the affidavit of IRS Litigation Advisor Spencer Kell to support its contention that its disclosures to the Hugheses' employers were necessary and legitimate. The Hugheses presented no evidence of any sort, beyond their own allegations, that the disclosures were illegal or improper in any way. They presented no facts that demonstrate that a factual issue exists as to whether unauthorized disclosures were made. The district court, therefore, properly granted summary judgment on this claim.

The Hugheses also argue that the IRS has maintained records about them that were unnecessary and irrelevant in violation of 5 U.S.C. § 552a(e)(1). Once again, summary judgment was appropriate because the Hugheses presented no evidence beyond their own allegations that the IRS violated § 552a(e)(1). This mere assertion, without any evidence, is insufficient to withstand summary judgment.

The Hugheses do, however, launch several tangential attacks on the district court's decision. First, the Hugheses argue that the IRS has no authority outside of Washington, D.C. To support this contention, they rely on 4 U.S.C. § 72, which states that "[a]ll offices attached to the seat of governments shall be exercised in the District of Columbia, and not elsewhere, except as otherwise expressly provided by law." This section does not foreclose the exercise of authority by the IRS outside the District of Columbia. The President is authorized to establish internal revenue districts for the purpose of administering the internal revenue laws, and these districts can be created outside of Washington, D.C. *See* 26 U.S.C. § 7621. Furthermore, as we have held, the Secretary of the Treasury and the Commissioner of Internal

Revenue have the authority to delegate tax collecting power to local IRS officers and employees throughout the country. *See supra* Part II(A)(1).

The Hugheses next claim that the district court was "derelict" and "reckless" in basing its grant of summary judgment on the declaration of Kell. This argument is meritless. The district court did not base its decision solely on Kell's declaration. Rather, the court properly granted summary judgment because the Hugheses failed to meet their burden of demonstrating that genuine issues existed for trial.

■ Finally, the Hugheses argue that Kell's declaration was inadmissible hearsay and that the declaration violated the best evidence rule. These assertions, even if true, do not preclude the district court from granting summary judgment in favor of the government. Rule 56 permits the use of affidavits in evaluating a motion for summary judgment. While the facts underlying the affidavit must be of a type that would be admissible as evidence, Fed. R.Civ.P. 56(e), the affidavit itself does not have to be in a form that would be admissible at trial. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

AFFIRMED.