**Robert C. MacELVAIN, Plaintiff,**

v.

**UNITED STATES of America and Mohammed Ali Shah, Defendants.**

**Civ. A. No. 93–T–542–N.**

United States District Court, M.D. Alabama, Northern Division.

Aug. 23, 1994.

Richard L. Pyper, Thorington & Gregory, Montgomery, AL, Julian L. McPhillips, Jr., Kenneth Jay Shinbaum, McPhillips, Shinbaum & Gill, Montgomery, AL, David G. Chiodo, David G. Chiodo & Associates, P.C., Atlanta, GA, for Robert C. MacElvain.

Kenneth E. Vines, Redding Pitt, U.S. Attys., U.S. Attys. Office, Montgomery, AL, Carol Koehler Ide, U.S. Dept. of Justice, Tax Div., Washington, DC, for U.S.

Kenneth L. Millwood, Kevin H. Hudson, B. Shane Clanton, Nelson, Mullins, Riley & Scarborough, Atlanta, GA, for Mohammed Ali Shah.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

Plaintiff Robert C. MacElvain has brought this lawsuit against defendants United States of America and Mohammed Ali Shah, claiming: first, that he is entitled to have the sale of property seized from him in 1993 set aside because the Internal Revenue Service ("IRS") failed to follow proper procedures; and, second, that the IRS should be enjoined from further efforts to assess and collect unpaid taxes for the years 1980 to 1986 because the IRS did not adhere to the correct procedures for making assessments and did not make such assessments within the time period allowed by statute. This action is now before the court on motions to dismiss filed by both the government and Mohammed Ali Shah. For the reasons that follow, the motions will be granted on the ground that the court lacks jurisdiction to grant the relief MacElvain seeks.

## I. BACKGROUND

The IRS has determined that, for the years 1980 to 1986, MacElvain is liable for unpaid federal income taxes, interest, and statutory additions in excess of $2,036,835. The IRS has made various attempts to collect these unpaid taxes. It mailed notices and demands for payments to MacElvain, and it informed him that his property might be subject to seizure. After these collection efforts proved futile, the IRS obtained a writ of seizure against his and his wife's property. It then seized several assets, including MacElvain's stock interest in Fulton Ferracute Industries International, Inc. The IRS determined that the stock interest was in danger of perishing or becoming greatly reduced in value and needed to be sold immediately. It therefore sold the stock interest to a Pakistani national, Mohammed Ali Shah, at a public auction.

In his complaint filed in April 1993 against the United States of America and Mohammed Ali Shah, MacElvain challenged the sale of his stock interest on the ground that the IRS did not provide adequate notice of the sale. He asked that the court set aside the sale and enjoin further efforts at collection by the IRS. MacElvain later amended his complaint to challenge the validity of the tax assessments made against him between 1980 and 1986. He contends that the IRS did not properly follow the procedures for making tax assessments and failed to impose the deficiencies within the time allowed by the statute of limitations. With the amended complaint, MacElvain added a request for injunctive relief requiring the IRS to withdraw all liens filed against his property and to cease its efforts to file future liens.

The government contends that MacElvain's lawsuit should be dismissed because the court has no subject-matter jurisdiction over his claims. Ali Shah also moves for dismissal on several grounds, including lack of subject-matter jurisdiction.

## II. THE GOVERNMENT'S MOTION TO DISMISS

MacElvain seeks several forms of injunctive relief. He asks that the government be required to set aside the sale of his stock interest in Fulton Ferracute Industries. He also asks that the IRS be directed to withdraw all liens filed on his property and to "cease and desist levying against any and all bank accounts, investment accounts, retirement benefits and any and all other tangible and intangible property owned by [him]."[1] It appears that there are two possible jurisdictional bases for the relief he seeks in this

---

1. MacElvain's amended complaint at 2–3, filed on November 17, 1993.

case: first, a judicially created exception to the Anti–Injunction Act, 26 U.S.C.A. § 7421(a); and, second, 28 U.S.C.A. § 2410(a), which authorizes a taxpayer to sue the United States to determine title. Each of these possible sources of jurisdiction will be considered in turn.

### A. Exceptions to the Anti–Injunction Act

■ Under the Anti–Injunction Act, district courts have only limited power to grant equitable relief to litigants who challenge the government's tax collection powers. Section 7421(a) provides that:

"Except as provided in sections 6212(a) and (c), 6213(a), 6672(b), 6694(c), 7426(a) and (b)(1), and 7429(b), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."

None of the exceptions applies in this case. Sections 6212 and 6213 both apply only when taxpayers appeal a notice of deficiency to the United States Tax Court; § 6672(b) applies to bonds filed within 30 days of the assessment to ensure collection; § 6694 applies to penalty proceedings against return preparers; § 7426 addresses third-party wrongful levy suits; and § 7429 applies to proceedings brought to review jeopardy assessments.

■ There is, however, one additional exception to § 7421(a). The Supreme Court has carved out an exception for cases in which (1) there are no circumstances under which the government could prevail on the merits and (2) where the plaintiff has no adequate remedy at law and might face an irreparable injury. *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962). In determining whether there is a chance the government could prevail on the merits, the

court must decide that, "under the most liberal view of the law and the facts, the United States cannot establish its claim," *id.;* the government's claim must be "without foundation." *Id.* at 8, 82 S.Ct. at 1129.

■ MacElvain has not established that he is entitled to this exception. The certificates of assessment and payment entered against a taxpayer are treated as presumptively valid evidence that the assessments are correct and that they were prepared in accordance with IRS procedures. *United States v. Chila,* 871 F.2d 1015, 1017–18 (11th Cir.), *cert. denied,* 493 U.S. 975, 110 S.Ct. 498, 107 L.Ed.2d 501 (1989). MacElvain has offered no evidence to rebut this presumption of correctness. He never identifies with any degree of specificity or detail the procedural defects to which he refers in his complaint. In addition, MacElvain's contention that his tax liabilities were not assessed within the time period allowed by the statute of limitations also appears to be without merit. The statute of limitations is tolled "[i]n the case of a false or fraudulent return," or in the event of "a willful attempt . . . to defeat or evade tax [liabilities]." 26 U.S.C.A. § 6501(c)(1) & (2). Because the tax liabilities MacElvain listed on his tax returns were substantially less than those determined by the IRS, the government has a more than colorable case that MacElvain engaged in intentional fraud, which would toll the running of the statute of limitations.[2] The court therefore cannot conclude, as required in *Enochs,* that there are no circumstances under which the government could prevail on the merits against MacElvain.

■ Finally, as to the claim that was at the heart of MacElvain's original complaint—that he was not given adequate notice of the sale of his stock interest—again he is unable to show, as required in *Enochs,* that there are no circumstances under which the gov-

---

**2.** In 1980, MacElvain stated that he owed $1,896 in income taxes, while the IRS determined the amount to be $190,291. In 1981, MacElvain claimed that he owed only $189 in taxes, while the IRS determined the amount owed to be $384,648. In 1982, MacElvain showed his tax liabilities to be only $23, while the IRS determined his liabilities to be $81,897. In 1983, MacElvain admitted to only four dollars in tax

liability, while his taxable income was later determined to be $350,768. In 1984, MacElvain claimed he had no taxable income, while the IRS valued the actual amount at $52,847. This trend continued in 1985, with MacElvain claiming seven dollars in tax liabilities, and the IRS determining the amount to be $139,483. Finally, in 1986, MacElvain listed his tax liabilities at eleven dollars, and the IRS placed them at $75,536.

ernment could prevail on the merits. 26 U.S.C.A. § 6336 provides:

"If the Secretary determines that any property seized is liable to perish or become greatly reduced in price or value by keeping, or that such property cannot be kept without great expense, he shall appraise the value of such property and—

(1) Return to owner.—If the owner of the property can be readily found, the Secretary shall give him notice of such determination of the appraised value of the property. The property shall be returned to the owner if, within such time as may be specified in the notice, the owner—

(A) Pays to the Secretary an amount equal to the appraised value, or

(B) Gives bond in such form, with such sureties, and in such amount as the Secretary shall prescribe, to pay the appraised amount at such time as the Secretary determines to be appropriate in the circumstances.

(2) Immediate sale.—If the owner does not pay such amount or furnish such bond in accordance with this section, the Secretary shall as soon as practicable make public sale of the property in accordance with such regulations as may be prescribed by the Secretary." [3]

The evidence reflects that, after the IRS determined that the stock interest in Fulton Ferracute Industries was in danger of becoming either perishable or greatly reduced in value, an effort was made to notify MacElvain. On February 17, 1993, the IRS orally notified a representative of MacElvain's that, because of its diminishing value, the stock would be sold in two days. On February 18, notice of the sale was delivered in writing to MacElvain's home, and notice was also posted in five public locations. On February 19, MacElvain's wife acknowledged receipt of the notice, but she advised an IRS representative that her husband was unavailable.

In response, MacElvain contends that the IRS did not have a sufficient basis for its conclusion that his stock interest was declining in value; moreover, he suggests that the IRS failed to comply with the expedited notice procedures. According to MacElvain, he never personally received advance notice of the sale either orally or in writing. Without deciding whether the IRS's efforts at notice were all that is required under the relevant statute and regulations, the court still concludes that the government's position is not so weak that under no circumstances could the court conclude that the government could prevail on the merits against MacElvain. In addition, there is no evidence in the record to suggest that the government had no legitimate basis for its conclusion that MacElvain's stock interest was declining in value. On all of MacElvain's claims, he fails to establish that the government does not have a colorable case against him.

---

**3.** The relevant IRS regulations provide in part: "(a) Appraisal of certain seized property. If the district director determines that any property seized by levy is liable to perish or become greatly reduced in price or value by keeping, or that such property cannot be kept without great expense, he shall appraise the value of such property and return it to the owner if the owner complies with the conditions prescribed in paragraph (b) of this section or, if the owner does not comply with such conditions, dispose of the property in accordance with paragraph (c) of this section.
(b) Return to owner. If the owner of the property can be readily found, the district director shall give him written notice of his determination of the appraised value of his property. However, if the district director determines that the circumstances require immediate action, he may give the owner an oral notice of his determination of the appraised value of the property, which notice shall be confirmed in writing prior to sale. The property shall be returned to the owner if, within the time specified in the notice, the owner—
(1) Pays to the district director an amount equal to the appraised value, or
(2) Gives an acceptable bond....
(c) Immediate sale. If the owner does not pay the amount of the appraised value of the seized property within the time specified in the notice, or furnish bond ..., the district director shall as soon as practicable make public sale of the property in accordance with the following terms and conditions—
(1) Notice of sale. If the owner can readily be found, a notice shall be given to him. A notice of sale also shall be posted in two public places in the county in which the property is to be sold. The notice shall specify the time and place of sale, the property to be sold, and the manner and conditions of sale ...
(2) Sale. The property shall be sold at public auction to the highest bidder."
26 C.F.R. § 301.6336–1.

■ Finally, MacElvain has failed to meet *Enochs*'s second requirement: that he must be without legal remedies and that he must be facing irreparable injury. *Lovell v. United States*, 795 F.2d 976, 977 (11th Cir.1986). MacElvain could have filed a petition with the United States Tax Court within 90 days of the notice of deficiency for a redetermination of his liabilities. 26 U.S.C.A. § 6213(a). He could also still pay the liabilities and sue for a refund in a federal district court, but he has not pursued this remedy either. § 7422. Moreover, even the prospect of substantial financial loss does not establish irreparable harm. *See Hughes v. United States*, 953 F.2d 531, 536 (9th Cir.1992).

### B. Quiet–Title Action

■ The court also finds that 28 U.S.C.A. § 2410(a)—which permits the United States to be named as a party in any suit brought to determine who has title to real or personal property over which the United States has asserted an interest—does not support jurisdiction.[4] Whether the jurisdictional bar imposed by the Anti–Injunction Act is applicable to a claim brought as a quiet-title action is a question that is unsettled. At least one appellate court has suggested, without deciding, that § 2410(a) operates as a potential basis for injunctive relief, independent of the constraints of the Anti–Injunction Act. *See Hughes*, 953 F.2d at 537. *See also Smith v. United States*, 1989 WL 91136 at *4 (M.D.Ala. June 19, 1989) (Thompson, J.). Other courts have treated the Act as a limitation on the relief sought under a quiet-title action. *See, e.g., Bassett v. United States*, 782 F.Supp. 113, 116–17 (M.D.Ga.1992).[5] This court finds, however, that, for purposes

of this lawsuit, it need not decide the precise boundaries between the Anti–Injunction Act and a § 2410(a) quiet-title action. Even assuming that a quiet-title action is an avenue for pursuing injunctive remedies, the rationale behind § 2410(a) suggests that the claims advanced by MacElvain should still be foreclosed.

■ The reach of § 2410(a) has been limited by the Eleventh Circuit Court of Appeals and virtually every other appellate court that has addressed the issue. The only litigation which may be brought under § 2410(a) is a challenge to the procedural validity of a federal tax lien. *Stoecklin v. United States*, 943 F.2d 42, 43 (11th Cir.1991); *see also McCarty v. United States*, 929 F.2d 1085, 1087–88 (5th Cir.1991); *Robinson v. United States*, 920 F.2d 1157, 1161 (3d Cir.1990); *Kulawy v. United States*, 917 F.2d 729 (2d Cir.1990); *Schmidt v. King*, 913 F.2d 837, 839 (10th Cir.1990); *Elias v. Connett*, 908 F.2d 521, 527 (9th Cir.1990); *Pollack v. United States*, 819 F.2d 144, 145 (6th Cir.1987). Taxpayers may *not* attack the merits of the underlying assessment itself. *Stoecklin*, 943 F.2d at 43.

■ MacElvain's claim that the statute of limitations had run on the determination of liability is a challenge to the underlying merits of the assessment and is therefore beyond the scope of a § 2410(a) action. *See McCarty*, 929 F.2d at 1088 (analyzing a statute of limitations based challenge as a challenge to the underlying validity of the assessment). In addition, although MacElvain characterizes as procedural his claim that the IRS failed to follow required procedures in making its assessments for the years 1980 to 1986, he fails to describe exactly how the IRS

---

4. Ordinarily, lawsuits against the United States are barred by the doctrine of sovereign immunity, which permits the United States to be sued only when it consents to be sued. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Section 2410(a), however, provides:

   "Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—
   (1) to quiet title to,
   (2) to foreclose a mortgage or other lien upon,

(3) to partition,
(4) to condemn, or
(5) of interpleader or in the nature of interpleader with respect to,
real or personal property on which the United States has or claims a mortgage or other lien."

5. Litigants bringing tax challenges have at times couched their claims for declaratory relief in terms of § 2410(a) while staking their claims for injunctive relief on the exceptions to the Anti–Injunction Act. *See, e.g., Elias v. Connett*, 908 F.2d 521, 523–27 (9th Cir.1990); *Brewer v. United States*, 764 F.Supp. 309 (S.D.N.Y.1991).

violated any required procedures. A close examination of this claim suggests that MacElvain is essentially trying to challenge the merits of the underlying assessments for the years in question. In any event, irrespective as to whether his claim is characterized as procedural or substantive, he has failed to state the factual basis for a claim that the IRS did not follow required procedures in making its tax assessments for the years 1980 to 1986.[6]

Finally, even assuming that one or more of MacElvain's claims might legitimately be brought under a § 2410(a) quiet-title action because they are procedural in nature, this is not the end of the court's inquiry. The government contends that § 2410(a) confers jurisdiction only if, at the time the action is commenced, the government still claims a lien interest in the property. In this case, MacElvain's original challenge to the sale of the Fulton Ferracute Industries stock interest was brought on April 28, 1993, well after the government had surrendered any lien interest by selling the stock.

■ As best this court can determine, this is an issue the Eleventh Circuit has never squarely resolved.[7] A variety of courts, however, have followed the approach the government urges on this court, that of permitting a quiet-title lawsuit only when the government had a lien interest in the property at the time the lawsuit was commenced

and thus the property has not been sold as of the time the lawsuit is filed. *See Powelson v. United States*, 979 F.2d 141, 145 (9th Cir. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1844, 123 L.Ed.2d 468 (1993); *Hughes v. United States*, 953 F.2d 531, 538 (9th Cir. 1992); *Brewer v. United States*, 764 F.Supp. 309, 314 (S.D.N.Y.1991); *Erickson v. United States*, 780 F.Supp. 733, 736 (W.D.Wash. 1990). Although a few courts have allowed a § 2410(a) action after a sale has been completed, they have done so only because the government still had a lien interest in the property at the time the lawsuit was brought. *See Kulawy v. United States*, 917 F.2d 729, 733–34 (2d Cir.1990) (when lien was on property at time complaint was filed, government cannot oust valid jurisdiction by selling property); *see also Bank of Hemet v. United States*, 643 F.2d 661, 665 (9th Cir.1981) (quiet-title action authorized when government still had an interest in the property at the time the complaint was filed). The court therefore concludes that jurisdiction under § 2410(a) is inappropriate when, before the taxpayer initiates litigation, the government has completed its sale of property and no longer retains a lien.

■ The most persuasive reason for this limitation is in the very nature of a quiet-title action. The purpose of a quiet-title action is "to determine who owns the title to real or personal property over which the United

6. The government further argues that MacElvain has failed to satisfy § 2410's procedural prerequisites for bringing suit. Section 2410(b) provides:

"The complaint or pleading shall set forth with particularity the nature of the interest or lien of the United States. In actions or suits involving liens arising under the internal revenue laws, the complaint or pleading shall include the name and address of the taxpayer whose liability created the lien and, if a notice of the tax lien was filed, the identity of the internal revenue office which filed the notice, and the date and place such notice of lien was filed."

The court agrees that MacElvain has failed to satisfy these requirements—in particular, because the government had no interest in the Fulton Ferracute Industries stock at the time MacElvain initiated this lawsuit, he could not meet the requirement that "The complaint or pleading shall set forth with particularity the nature of the interest or lien of the United States."

7. MacElvain cites two cases in support of the proposition that the Eleventh Circuit and the former Fifth Circuit have permitted quiet-title actions to go forward even though the government no longer had a lien interest in the property and the lawsuit was brought after the sale had commenced. However, neither of these cases is persuasive precedent for MacElvain's contention. In *Stoecklin*, the Eleventh Circuit authorized an action to quiet title against property upon which notices of levy had been placed. However, there is no indication in *Stoecklin* that the property had actually been sold, and the liens on the property were intact at the time of the suit. 943 F.2d at 43. As for the Fifth Circuit's opinion in *Reece v. Scoggins*, 506 F.2d 967, 971 (5th Cir. 1975), that court did not address the issue of whether a completed sale terminated jurisdiction over a quiet-title action; nor did the defendants raise lack of jurisdiction as a defense.

States has asserted some interest," *Smith v. United States,* 1989 WL 91136 at *4 (M.D.Ala. June 19, 1989) (Thompson, J.), and implicit in this purpose is the requirement that the defendant—in this case the United States—have, at the time of the initiation of the lawsuit, an interest adverse to that of the plaintiff. Indeed, consistent with this purpose, § 2410(a) requires that "The complaint or pleading shall set forth with particularity the nature of the interest or lien of the United States." Moreover, this reading of § 2410(a) is consistent with the understanding that has devolved from its ancient underpinnings. State courts have held that in order to maintain quiet-title actions, which have their roots in courts of chancery from the earliest times, there must be a showing that the defendant asserts a claim or interest that is adverse to the plaintiff's. *See, e.g., Sadler v. Home Savings,* 733 S.W.2d 856 (Mo.App.1987) (once bank had assigned deed of trust it no longer had interest in property and was properly dismissed from quiet-title action); *Lake Garda Improvement Association v. Battistone,* 155 Conn. 287, 231 A.2d 276 (1967) (an action to quiet title is quasi in rem and lies against those who at time it is instituted are present claimants to land under an instrument that creates cloud); 74 C.J.S. Quieting Title § 37 ("In order to maintain the statutory action to determine adverse claims to realty, there must be a showing that defendant asserts a claim which is adverse to plaintiff's title or possession") (1951).

■ In the present case, with the purchase of MacElvain's stock interest by Mohammed Ali Shah, the government's lien was extinguished well before MacElvain brought this lawsuit. MacElvain cannot therefore maintain an action against the government under § 2410(a).

### III. MOHAMMED ALI SHAH'S MOTION TO DISMISS

MacElvain also names as a defendant Mohammed Ali Shah, who purchased the Fulton stock in the February 1993 sale. Ali Shah moves for dismissal on the grounds that (1)

service of process was insufficient, (2) the complaint fails to state a cause of action, and (3) the court lacks subject-matter jurisdiction over MacElvain's claims. The court agrees that Ali Shah's motion to dismiss should be granted on the grounds that jurisdiction over this action is lacking.

In his original complaint, which addresses the sale of the Fulton Ferracute Industries stock, MacElvain does not identify any misconduct on the part of Mohammed Ali Shah. He suggests only that Mohammed Ali Shah profited from improprieties by the IRS relating to the sale. The sole basis for including Mohammed Ali Shah in this lawsuit, therefore, is apparently MacElvain's theory that the stock sale could not be set aside without affecting Mohammed Ali Shah's interests. This theory, of course, presupposes that the court has jurisdiction to grant the relief MacElvain seeks.

■ Because the assumption that the court may grant MacElvain relief is false, there is no longer any basis for including Mohammed Ali Shah as a party in this lawsuit. Even assuming that a valid claim could ever exist against a purchaser of property, such a claim could lie only if this court had jurisdiction over the subject matter of the lawsuit.[8] *See Hughes,* 953 F.2d at 541 (rejecting joinder of additional parties in quiet-title action when the court lacked jurisdiction to grant relief against the government).

DONE.

---

8. The court need not address Mohammed Ali Shah's arguments relating to MacElvain's failure to state a claim and insufficient service of process.