981 F.2d 1257
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Roger B. DAVIS, Plaintiff-Appellant,
v.
Paul YOHEY; Carol Ployhar; Sgt. Valentine; George Sumner;
C/O Berger, Defendants-Appellees.
 No. 91-16208.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 16, 1992.*
Decided Dec. 22, 1992.
 
 Before HUG, PREGERSON and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Nevada state prisoner Roger Brent Davis appeals pro se from the district court's grant of summary judgment on behalf of Defendants-Appellees for a claim brought under 42 U.S.C. § 1983. This court has jurisdiction under 28 U.S.C. § 1291. We affirm.
 
 BACKGROUND
 
 3
 During a routine cell search on July 25, 1989, Correctional Officer Tom Crowder found two packets of nude photographs of Davis's wife in Davis's footlocker. Administrative Directive 45-89 of the Nevada Department of Prisons Code of Penal Discipline prohibits inmate possession of noncommercial nude photographs.
 
 
 4
 On July 31, 1989, Davis was served with notice of charges resulting from his possession of the photographs. On the same day, a hearing officer's "investigation disposition" referred this incident to the disciplinary committee at the Nevada Department of Prisons. On August 30, 1989, Davis was found guilty of possession of contraband, in violation of Administrative Directive 45-89. Administrative Directive 45-89 states, in relevant part:
 
 
 5
 An inmate is not allowed to receive or to retain in his or her possession photographs of nude individuals unless the photographs originate from a commercial publication of general circulation.... These types of intimate photographs are considered highly emotionally charged items for an inmate to have in his/her possession and have caused serious injuries and even deaths in a prison setting. The emotional attachment to the subject of non-commercial photographs can cause serious disruption between prisoners if they are seen by someone other than to whom they were sent. These types of photographs provoke violence by arousing the interest of other inmates. They are therefore considered disruptive to institutional order and/or security.
 
 
 6
 In accordance with A[dministrative] R[egulation 750, all mail may be opened for the inspection of contraband. Incoming privileged mail may also be opened, but only in the presence of the inmate to whom the communication is addressed. Any mail officer who observes prohibited nude photographs being sent to an inmate, during the routine inspection, will notify the designated property officer who will place the photographs in the inmate's personal property envelope. The mail officer will also notify the inmate to whom the photographs are addressed and the sender and ... allow the inmate thirty (30) days to make arrangements to dispose of the photographs. Should such arrangements not be made, the photographs will be destroyed. Any inmate who currently has such photographs in his/her possession will be given thirty (30) days from the date of this Directive to return the photographs to the sender at their own expense. Should such arrangements not be made, the photographs will be destroyed if found in the possession of the inmate.
 
 
 7
 This directive was issued by the Nevada State Prison on March 10, 1989 and therefore was in effect, and had been in effect for more than thirty days, at the time Davis's photographs were seized. Administrative Directive 45-89 was not in effect when Davis first came into possession of the photographs.
 
 
 8
 Davis filed an appeal of the disciplinary action and requested the return of his photos so he could send them to his family. Both the appeal and his request for the photos were denied. Thereafter, Davis filed a lawsuit under 42 U.S.C. § 1983 against defendants Ployhar, Valentine, Sumner, and Berger (prison officials) in the Federal District Court. He alleged that the confiscation of his photographs and the disciplinary action based on his possession of the photographs violated his rights. The defendants' attorney, Paul Yohey of the Nevada Attorney General's Office, requested and received the photographs from prison officials to prepare for trial and to use as evidence in the case. Davis's requests to Carol Ployhar, the chairman of the prison disciplinary committee, for return of the photographs were denied. As a result, Davis filed a second lawsuit against Attorney General Yohey and Ployhar, alleging that they had conspired to take possession of the photographs. On June 5, 1990, in accordance with the respective requests of Davis and the defendants, the district court consolidated the two actions.
 
 
 9
 On June 21, 1990, the defendants filed a Motion to Dismiss/Motion for Summary Judgment on behalf of all the defendants, arguing that they were not liable for the seizure of Davis's photographs as a matter of law. On July 5, 1990, Davis filed an opposition and a cross-motion for summary judgment on the grounds that he did not receive actual notice of the regulation that prohibited possession of the nude photographs.
 
 
 10
 On July 9, 1991, the district court issued its Memorandum/Decision and Order granting defendants' motion for summary judgment in its entirety. In so doing, the district court concluded that, given the legitimate security concerns inherent in the possession by inmates of personal nude photographs and the absence of any ready alternative that would allow the introduction of such photographs into the prison setting, Administrative Directive 45-89 was constitutional. The district court also ruled that Davis had constructive knowledge of Administrative Directive 45-89 because the evidence showed that the directive was sufficiently posted within the prison and that all the inmates in the Nevada State Prison had access to, and notice of, the new regulation.
 
 
 11
 Thereafter, Davis filed his timely appeal.
 
 DISCUSSION
 
 12
 We review a grant of summary judgment de novo. Jones v. Union Pacific R.R. Co., 968 F.2d 937, 940 (9th Cir.1992); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987).
 
 1. Notice of Rule Change
 
 13
 Davis contends that the district court erred in determining that constructive notice was sufficient to inform him of the issuance of Administrative Directive 45-89. He argues that the defendants must demonstrate that he had actual notice of the directive, which they have failed to do. We disagree.
 
 
 14
 In reviewing Davis's challenge to the district court's grant of summary judgment, we must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Jackson v. Gates, 975 F.2d 648, 651-52 (9th Cir.1992), citing Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). Mere allegations that genuine issues of material fact exist, without any supporting evidentiary materials, are insufficient to survive a motion for summary judgment. Hughes v. United States, 953 F.2d 531, 542 (9th Cir.1992). Davis does not contest the district court's finding that he had constructive notice of the regulation. His claim is a purely legal one. Hence, we must determine whether the district court correctly applied the relevant substantive law in concluding that actual notice is not required by law.
 
 
 15
 Davis cites no valid authority that entitles him to actual notice of Administrative Directive 45-89. Nor are we aware of any such authority. Hence, we affirm the district court's finding that the law does not require that Davis receive actual notice of Administrative Directive 45-89. The constructive notice that Davis received was sufficient to satisfy the requirements of due process of law. See Wolff v. McDonnell, 418 U.S. 539 (1974).
 
 2. Issue of Material Evidence
 
 16
 Davis also contends that summary judgment was improper because of the existence of genuine issues of material fact. See Tzung, 873 F.2d at 1340. Specifically, he contends that genuine issues exist as to: (1) the personal nature of the photographs of his wife and their status as part of the consortium and societal relationship between Davis and his wife; (2) the fact that the photographs had been allowed into the prison prior to the implementation of Administrative Directive 45-89; and (3) the ex post facto application of the new regulation to Davis.[1]
 
 
 17
 With regard to the first issue, defendants do not contest the intensely personal nature of the confiscated photographs. Indeed, it is precisely because of their personal nature that Administrative Directive 45-89 considers such photographs to be "highly emotionally charged" and therefore likely to cause "serious injuries and even deaths in a prison setting" in the event that other inmates obtain access to them.
 
 
 18
 Likewise, defendants do not dispute that Davis obtained the photographs before Administrative Directive 45-89 was implemented. This fact does not, however, excuse Davis's violation of Administrative Directive 45-89 because of his continued possession of the photographs after issuance of the directive.
 
 
 19
 Finally, Davis's allegation regarding the allegedly impermissible ex post facto application of Administrative Directive 45-89 to his case involves a strictly legal issue.[2] Indeed, neither party disputes the relevant underlying facts: the actual date on which Administrative Directive 45-89 was issued by the prison and the date on which the photographs were discovered in Davis's footlocker.
 
 
 20
 Hence, we find that no issues of material fact exist and therefore summary judgment was proper.
 
 3. Claim Against Paul G. Yohey
 
 21
 Davis further contends that the district court failed to reach his claim against defendant Yohey. This claim alleged that Yohey's request and receipt of the photographs from prison officials for use as evidence in Davis's then-pending civil suit violated his due process rights. This contention is without merit.
 
 
 22
 The motion for summary judgment was brought on behalf of all defendants, including Yohey. The district court granted the motion in its entirety. Hence, the district court did implicitly address Davis's claim against Yohey and granted summary judgment in Yohey's favor.
 
 
 23
 Davis does not challenge the merits of the district court's decision, which determined that Administrative Directive 45-89 was a constitutionally valid restriction on incoming correspondence to prison inmates.[3] Under Administrative Directive 45-89, the photographs seized from Davis's prison footlocker are properly categorized as "contraband" by the Nevada Department of Prisons. As such, the district court properly made the implicit conclusion, by granting summary judgment on behalf of defendant Yohey, that Davis can claim no legitimate property interest in the photographs at this time.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The panel unanimously found this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Although Davis does not specify any issues of material fact in his brief, he does allege these issues in Plaintiff-Appellant's Response to Defendants-Appellees' Notice to the Court and Plaintiff-Appellant's Notice in Support of Oral Argument by Telephonic Conference or in the Alternative, Motion for Remand, filed with this court, October 19, 1992
 
 
 [2]
 This contention is without merit. The new directive was issued by the prison on March 10, 1989 and prohibits the receipt and retention of non-commercial nude photographs. Although Davis received the photographs before issuance of the directive, he was found in possession of such photographs on July 25, 1989, after the directive was in effect. Hence, no ex post facto application of Administrative Directive 45-89 was required to charge him for possession of contraband
 
 
 [3]
 The district court determined that Administrative Directive 45-89 satisfied the four-part test outlined in Thornburgh v. Abbott, 109 S.Ct. 1874, 1882-84 (1989) for determining the validity of restrictions on incoming correspondence to prison inmates because: (1) there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, i.e., banning access to nude photographs of individuals to whom inmates may have an emotional attachment in order to reduce the likelihood of provoking violence; (2) although the absolute ban on such photographs denies inmates an alternative means of exercising the right that is being restricted, the denial is reasonable given the security concerns, especially since inmates may still receive commercially published nude photographs and photographs of individuals with whom inmates have an emotional attachment as long as such photographs are not nude; (3) to accommodate the asserted right to receive noncommercial, nude photographs would cause the prison administration to have greater security concerns, thus impacting the prison's resources generally; and (4) there is no ready alternative to allow introduction of such photographs into the prison setting without jeopardizing the security concerns. See Memorandum Decision and Order, at 4, citing Thornburgh, 109 S.Ct. at 1881; Turner v. Safley, 482 U.S. 78, 89-92 (1987)