T.C. Memo. 2002-291


UNITED STATES TAX COURT


JOSEPH T. TORNICHIO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13629-01L.          Filed November 26, 2002.


Joseph T. Tornichio, pro se.

<u>Katherine Lee Kosar</u>, for respondent.



MEMORANDUM FINDINGS OF FACT AND OPINION


THORNTON, <u>Judge</u>:  Pursuant to section 6330(d), petitioner seeks review of respondent's determination to proceed with collection of his 1995 through 1997 tax liabilities.[1]

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended.

FINDINGS OF FACT

The parties have stipulated some of the facts, which we incorporate herein by this reference. When petitioner filed his petition, he resided in Akron, Ohio.

A.    Petitioner's Forms 1040

On or about April 12, 1996, February 22, 1997, and April 13, 1998, petitioner submitted to respondent Forms 1040, U.S. Individual Income Tax Return, for taxable years 1995, 1996, and 1997, respectively. On each Form 1040, petitioner listed his occupation as salesman.

To the extent he made any entries in the income portions of these Forms 1040, petitioner entered zeros; in particular, he entered zeros on line 7 for wages, salaries, tips, etc.; on line 22 for total income; and on line 31 for adjusted gross income. Petitioner left blank line 38, taxable income, and entered zeros for total taxes due. For each year, petitioner claimed refunds equal to the amount of Federal income tax that he reported withheld from wages--$1,675 for 1995, $559.82 for 1996, and $232.12 for 1997.

Petitioner attached to these several Forms 1040 substantially identical two-page statements alleging, among other things, that the Internal Revenue Code does not establish an income tax liability or require income taxes to be paid "on the basis of a return"; that requirements to file tax returns violate

his Fifth Amendment rights; and that his wages do not constitute "income" within the meaning of the Internal Revenue Code, on the basis of his interpretation of the "Corporation Excise Tax Act (of 1909)" and on a theory that only corporate-derived income constitutes taxable income.

B.  Notices of Deficiency and Petitioner's Responses

On October 10, 1997, and February 6, 1998, respondent (acting through Jimmy L. Smith, Director of the Internal Revenue Service (IRS) Service Center in Cincinnati, Ohio) issued petitioner notices of deficiency for 1995 and 1996, respectively; and on May 28, 1999, respondent (acting through R. Wayne Hicks, Director of the IRS Service Center in Cincinnati, Ohio) issued petitioner a notice of deficiency for 1997.  In these notices, respondent determined deficiencies in, and additions to, petitioner's Federal income taxes as follows:

|  |  | Additions to Tax | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654(a) |
| 1995 | $8,826 | $1,788.00 | $324.00 |
| 1996 | 11,990 | 2,857.55 | 605.09 |
| 1997 | 20,465 | 5,058.25 | 1,081.10 |

The deficiencies were based on respondent's determination that petitioner failed to report wage income as reported to respondent by Nationwide Communications, Inc., on Forms W-2, Wage and Tax Statement.

Although the notices of deficiency explained petitioner's right to petition the Tax Court to contest the deficiency determinations, petitioner chose not to do so. Rather, in various letters to respondent in 1997 through 1999, petitioner acknowledged receipt of the notices of deficiency and disputed respondent's authority to issue them.

C. Respondent's Final Notice and Petitioner's Response

After sending petitioner a number of notices of intent to levy, on October 17, 2000, respondent sent petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing in respect of the assessments of petitioner's deficiencies and additions to tax, plus interest, for tax years 1995, 1996, and 1997. By letter dated November 3, 2000, petitioner requested an administrative hearing.

D. The Appeals Office Hearing

On November 1, 2001, petitioner attended an administrative hearing in Akron, Ohio, before respondent's Appeals officer. According to a purported transcript of the hearing attached to petitioner's petition, petitioner declined to discuss meaningful collection alternatives at the hearing.[2] Rather, petitioner

_____

[2] Petitioner's purported transcript of the Appeals Office hearing reveals that the only "collection alternative" he was willing to discuss was patently spurious:

Now, I'm proposing an alternative for payment and that is let the record show that I'm providing the Internal
(continued...)

attempted to challenge his underlying tax liability and demanded proof of his tax assessments, copies of Form 4340 (Certificate of Assessments, Payments, and Other Specified Matters), copies of his tax returns for the years at issue, and verification that all applicable laws and administrative procedures had been followed in the assessment and collection process.

E.  Respondent's Notice of Determination

On November 1, 2001, respondent sent petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330.  In the notice of determination, the Appeals Office concluded that the proposed collection action should be sustained.

F.  The Petition

On December 4, 2001, petitioner filed his petition with this Court seeking review of respondent's notice of determination. The petition includes allegations that:  (1) The Appeals officer failed to properly verify that the requirements of any applicable law or administrative procedure were met as required under section 6330(c)(1); (2) petitioner did not receive the requisite statutory notice and demand for payment or valid notice of deficiency; and (3) petitioner was denied the opportunity to

---

[2](...continued)
Revenue Code with that section marked liability for tax.  If you could show me the statute that requires me to pay the tax, I am prepared to make arrangements to pay that which you say that I owe.

raise "relevant issues".  In support of this last-mentioned allegation, the petition cross-references portions of petitioner's purported transcript of the Appeals Office hearing in which petitioner sought unsuccessfully to engage the Appeals officer in a colloquy as to whether the Internal Revenue Code establishes any liability to pay income taxes.

After the hearing but before trial, respondent provided petitioner with computer transcripts of his account for the 3 tax years at issue and a copy of Monaghan v. Commissioner, T.C. Memo. 2002-16, in which this Court imposed penalties under section 6673(a)(1) for the taxpayer's taking frivolous positions.

G.  Petitioner's Refund Actions

Pursuant to section 6702, respondent assessed a $500 frivolous return penalty against petitioner for each of the years at issue, as well as for other years.  After respondent had collected these penalties for 1994 and 1995, petitioner filed an action in U.S. District Court for the Northern District of Ohio seeking a refund of these amounts.  In this action, petitioner relied "essentially on the same arguments he asserted in the attachments to his tax returns."  Tornichio v. United States, 81 AFTR 2d 98-1377, at 98-1379, 98-1 USTC par. 50,299, at 83,681 (N.D. Ohio 1998).[3]  The District Court dismissed petitioner's

---

[3] In a separate action, petitioner sought to have the U.S. District Court for the Northern District of Ohio review the

(continued...)

arguments as "frivolous", observing, among other things, that section 1 of the Internal Revenue Code imposes tax liability on taxpayers and that "income" encompasses wages.[4]  Id.  The District Court imposed sanctions on petitioner pursuant to rule 11 of the Federal Rules of Civil Procedure.

Describing petitioner as "an Ohio tax protestor", the U.S. Court of Appeals for the Sixth Circuit affirmed the District Court's judgment and concluded that "assertion of Tornichio's arguments in this appeal also warrants a Fed. R. App. P. [Federal Rules of Appellate Procedure] 38 award" of $1,000 in favor of the United States.  Tornichio v. United States, 83 AFTR 2d 99-1531, at 99-1531 to 99-1532 (6th Cir. 1999).

In a separate action in the District Court, petitioner sought refund of income taxes withheld from his wages for 1994

---

[3](...continued)
legitimacy of an Appeals Office hearing involving respondent's attempted collection of frivolous return penalties assessed against petitioner for 1996, 1997, and 1998.  The District Court dismissed the action for lack of jurisdiction.  Tornichio v. United States, 89 AFTR 2d 2002-1506, 2002-1 USTC par. 50,411 (N.D. Ohio 2002).

[4] The District Court explained:

Plaintiff argues the Code does not impose a tax "liability".  The plain language of the Code belies this, stating the tax is "imposed".  See 26 U.S.C. § 1. He attempts to distinguish between "imposing" a tax and creating a "liability" for tax.  The Court fails to see a difference.  Individuals have an affirmative duty to pay taxes.  * * * [Tornichio v. United States, 81 AFTR 2d 98-1377, at 98-1379, 98-1 USTC par.  50,299, at 83,681 (N.D. Ohio 1998).]

through 1996, arguing that the term "income" in section 61 encompasses only corporate income. Affirming an unpublished District Court order dismissing the action, the Court of Appeals stated that petitioner's legal assertions were "patently spurious". Tornichio v. United States, 83 AFTR 2d 99-1516, at 99-1517, 99-1 USTC par. 50,394, at 87,962 (6th Cir. 1999). The Court of Appeals assessed $1,000 in damages in favor of the United States pursuant to rule 38 of the Federal Rules of Appellate Procedure.

OPINION

A.    Statutory Framework

If any person neglects or refuses to make payment of any Federal tax liability within 10 days of notice and demand, the Secretary is authorized to collect the tax by levy on the person's property. Sec. 6331(a). At least 30 days before taking such action, however, the Secretary generally must provide the person with a final notice of intent to levy that describes, among other things, the administrative appeals available to the person. Sec. 6331(d). Upon request, the person is entitled to an administrative hearing before the Appeals Office of the IRS. Sec. 6330(b)(1). If dissatisfied with the Appeals Office determination, the person may seek judicial review in the Tax Court or a District Court, as appropriate. Sec. 6330(d).

Generally, the proposed levy actions are suspended for the pendency of the hearing and any judicial appeals therein. Sec. 6330(e)(1).

B.  Petitioner's Contentions

    1.  Underlying Tax Liability

Petitioner contends that he was improperly precluded at his Appeals Office hearing from challenging his underlying tax liability for the 3 tax years at issue. He bases this claim on the Appeals officer's refusal to engage in a colloquy with him regarding his frivolous protestations about the existence of any legal requirement to pay income taxes, and on his allegation that the notices of deficiency for the years at issue were invalid because they were not issued by the Secretary, and because he was not given a copy of the order delegating authority from the Secretary to the Director of the Service Center who issued them.

A taxpayer may contest the existence or amount of the underlying tax liability at an Appeals Office hearing only if the taxpayer did not receive any statutory notice of deficiency for the tax liability or did not otherwise have an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B); see Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 180-181 (2000). Petitioner received notices of deficiency for the 3 tax years at issue. Petitioner did not seek redetermination of the deficiencies in this Court. He did,

however, before the Appeals Office hearing, unsuccessfully seek a refund of his 1995 and 1996 withheld income taxes in Federal court. See Tornichio v. United States, 83 AFTR 2d 99-1516, 99-1 USTC par. 50,394 (6th Cir. 1999). Petitioner was not entitled to raise challenges to his underlying tax liability at the Appeals Office hearing.

Even if petitioner were permitted to challenge his underlying tax liability, however, the arguments he has advanced are without merit. In the previously cited refund actions involving, in part, petitioner's tax liabilities for 2 of the 3 years at issue here, the courts unequivocally rejected petitioner's "tax protest" arguments as "patently spurious". Id. at 99-1517, 99-1 USTC at 87,962; see Tornichio v. United States, 81 AFTR 2d 98-1377, 98-1 USTC par. 50,299 (N.D. Ohio 1998). The same may be said of petitioner's arguments regarding the validity of the notices of deficiency.

The Secretary or his delegate may issue notices of deficiency. Secs. 6212(a), 7701(a)(11)(B) and (12)(A)(i). The Secretary's authority to issue notices of deficiency has been delegated to the Director of the Service Center who issued the notices. See Nestor v. Commissioner, 118 T.C. 162, 165 (2002); Stamos v. Commissioner, 95 T.C. 624, 630-631 (1990), affd. without published opinion 956 F.2d 1168 (9th Cir. 1992); secs. 301.6212-1(a), 301.7701-9(b), Proced. & Admin. Regs.

2.  Verification Requirements

Petitioner contends that the Appeals officer failed to obtain verification from the Secretary that the requirements of all applicable laws and administrative procedures had been met under section 6330(c)(1).  This contention is without merit.

Federal tax assessments are formally recorded on a record of assessment.  Sec. 6203.  "The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment."  Sec. 301.6203-1, Proced. & Admin. Regs.  Section 6330(c)(1) does not require the Commissioner to rely on a particular document to satisfy the verification requirement.  Roberts v. Commissioner, 118 T.C. 365, 371 n.10 (2002); Kaeckell v. Commissioner, T.C. Memo. 2002-114; Weishan v. Commissioner, T.C. Memo. 2002-88; Kuglin v. Commissioner, T.C. Memo. 2002-51.  Moreover, section 6330(c)(1) does not require the Appeals officer to provide the taxpayer with a copy of the verification at the hearing.  Sec. 301.6330-1(e)(1), Proced. & Admin. Regs.; see also Nestor v. Commissioner, supra at 166.

According to petitioner's purported transcript of the Appeals Office hearing, the Appeals officer reviewed, among other things, transcripts of petitioner's account for the years at issue in determining that the taxes were properly assessed.  Some

5 months before trial, respondent sent petitioner "Plain English" computer transcripts of his account.  In addition, as part of the pretrial stipulation process, respondent provided petitioner with copies of so-called TXMODA transcripts of account.[5]  These various transcripts of petitioner's account, which are part of the record in this case, contain all the information prescribed in section 301.6203-1, Proced. & Admin. Regs.  See Schroeder v. Commissioner, T.C. Memo. 2002-190; Kaeckell v. Commissioner, supra; Weishan v. Commissioner, supra.[6]

Petitioner has shown no irregularity in the assessment procedure that would raise a question about the validity of the assessments or the information contained in the transcripts of account.  See Nestor v. Commissioner, supra at 167; Davis v. Commissioner, 115 T.C. 35, 41 (2000).  Accordingly, we hold that respondent satisfied the verification requirement of section 6330(c)(1).

_____

[5] A TXMODA transcript contains current account information obtained from the Commissioner's master file.  "TXMODA" is the command code that is entered into the Commissioner's integrated data retrieval system (IDRS) to obtain the transcript.  IDRS is essentially the interface between the Commissioner's employees and the Commissioner's various computer systems.  See Kaeckell v. Commissioner, T.C. Memo. 2002-114, n.2.

[6] The record does not reveal the particular type of transcript relied upon by the Appeals officer, but we regard this matter as irrelevant.  See Keene v. Commissioner, T.C. Memo. 2002-277, n.10.

3.  <u>Notice and Demand</u>

Petitioner contends that he did not receive a notice and demand for payment for any of the 3 tax years at issue as required by section 6303(a), which provides in pertinent part:

> SEC. 6303(a). General Rule.--Where it is not otherwise provided by this title, the Secretary shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof.
> * * *

"The form on which a notice of assessment and demand for payment is made is irrelevant as long as it provides the taxpayer with all the information required under 26 U.S.C. § 6303(a)." <u>Elias v. Connett</u>, 908 F.2d 521, 525 (9th Cir. 1990).

The TXMODA transcripts in the record show that for each year at issue, respondent sent petitioner both an initial notice and demand and, subsequently, a final notice and demand.  In addition, petitioner received numerous notices of intent to levy, as well as notices of deficiency.  These numerous notices sufficed to meet the section 6303(a) requirements.  See <u>Hughes v. United States</u>, 953 F.2d 531, 536 (9th Cir. 1992); <u>Standifird v. Commissioner</u>, T.C. Memo. 2002-245; <u>Weishan v. Commissioner</u>, <u>supra</u>.

For the foregoing reasons, we sustain respondent's determination as to the proposed levy as a permissible exercise of discretion.

C.    Section 6673 Penalty

Section 6673(a)(1) authorizes the Tax Court to require a taxpayer to pay to the United States a penalty not in excess of $25,000 whenever it appears that proceedings have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless.  The purpose of this penalty provision is to deter and penalize frivolous claims and positions.  Bagby v. Commissioner, 102 T.C. 596, 614 (1994).

This Court has repeatedly indicated its willingness to impose such penalties in collection review cases, see, e.g., Pierson v. Commissioner, 115 T.C. 576 (2000), and has in fact imposed such penalties in numerous cases, see Keene v. Commissioner, T.C. Memo. 2002-277 (imposing a $5,000 penalty), and cases cited therein at n.14.

Petitioner is a frequent litigator of groundless protests to the validity of the Internal Revenue Code.  Federal courts have unequivocally rejected his protester arguments and sanctioned him for raising them.  See, e.g., Tornichio v. United States, 83 AFTR 2d 99-1516, 99-1 USTC par. 50,394 (6th Cir. 1999); Tornichio v. United States, 83 AFTR 2d 99-1531 (6th Cir. 1999); Tornichio v. United States, 81 AFTR 2d 98-1377, 98-1 USTC par. 50,299 (N.D. Ohio 1998).

Despite these judicial rebuffs and sanctions, petitioner has instituted the instant action (involving in part the same tax years that were at issue in the cases cited above), raising many of these same types of frivolous arguments, as well as others. We are convinced that he has instituted this action primarily for delay; his positions in this proceeding are frivolous and groundless.

Some 5 months before trial, respondent provided petitioner with a copy of Monaghan v. Commissioner, T.C. Memo. 2002-16, in which this Court imposed penalties under section 6673(a)(1). Shortly before trial, this Court explicitly warned petitioner that his continued reliance on frivolous arguments would expose him to sanctions of up to $25,000 under section 6673. Petitioner has been undeterred by these warnings and by the sanctions previously imposed by the courts. Accordingly, in furtherance of the purpose of section 6673(a) to deter such proceedings instituted primarily for delay, we believe a more significant sanction is appropriate here. Pursuant to section 6673, we require petitioner to pay to the United States a penalty of $12,500.

All other arguments raised by petitioner and not expressly discussed herein are without merit. To reflect the foregoing,

Decision will be

entered for respondent.