T.C. Memo. 2002-315

UNITED STATES TAX COURT

CHRISTOPHER KILEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6676-02L.                    Filed December 27, 2002.

Christopher Kiley, pro se.

<u>Rollin G. Thorley</u> and <u>Robin Ferguson</u>, for respondent.

MEMORANDUM OPINION

ARMEN, <u>Special Trial Judge</u>:  This matter is before the Court
on respondent's Motion For Summary Judgment And To Impose A
Penalty Under I.R.C. Section 6673, filed pursuant to Rule 121.[1]
Respondent contends that there is no dispute as to any material

---

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code, as amended, and all Rule references
are to the Tax Court Rules of Practice and Procedure.

fact with respect to this levy action and that respondent's determination to proceed with collection of petitioner's outstanding tax liabilities for 1995, 1997, and 1998 should be sustained as a matter of law.

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(a) and (b); see Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982).

As explained in detail below, there is no genuine issue as to any material fact, and a decision may be rendered as a matter of law. Accordingly, we shall grant respondent's motion for

summary judgment.

Background

The record establishes and/or the parties do not dispute the following:

A.    Petitioner's Tax Liability for 1995

On or about April 15, 1996, Christopher Kiley (petitioner) and his wife Sabrena S. Legere[2] filed with respondent a joint Federal income tax return, Form 1040PC, for the taxable year 1995.  Petitioner listed his occupation as "waiter", and his wife listed her occupation as "cashier".

On their return, petitioner and his wife reported adjusted gross income in the amount of $41,874, consisting of wages and tips in the amount of $39,590 and taxable pensions/annuities in the amount of $2,284.[3]  After reduction for the standard deduction and personal exemptions, petitioner and his wife reported taxable income in the amount of $25,324 and a tax liability in the amount of $4,143.  After reduction for Federal income tax withheld ($2,871), petitioner and his wife reported the amount owed as $1,312, consisting of tax in the amount of

---

[2]   Ms. Legere did not file with the Court a petition for lien or levy action.  See infra G.  Accordingly, she is not a party to the present proceeding.

[3]   Petitioner and his wife attached to their return three Forms W-2, Wage and Tax Statement, showing the payment of wages and allocated tips, and one Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, etc., showing the payment of a taxable distribution.

$1,272 and an "estimated tax penalty" (i.e., addition to tax under section 6654(a)) in the amount of $40.

Petitioner and his wife did not enclose payment with their return of the amount reported as owed on their return.

On May 20, 1996, respondent assessed the tax liability reported by petitioner and his wife on their 1995 return (i.e., $4,143), together with the "estimated tax penalty" reported therein. On that date, respondent also assessed (1) an addition to tax under section 6651(a)(2) for failure to pay and (2) statutory interest.

Petitioner and his wife satisfied their outstanding liability for tax, additions to tax, and statutory interest through a series of installment payments, which was completed in July 1997.

By notice dated September 10, 1997, respondent determined a deficiency in the Federal income tax of petitioner and his wife for 1995 in the amount of $226.[4] No petition for redetermination was filed with the Court. See sec. 6213(a). Accordingly, on February 9, 1998, respondent assessed the deficiency, together with (1) an addition to tax under section 6652(b) for failure to report tip income and (2) statutory interest. On that same day, respondent sent petitioner and his wife a statutory notice of

_____

[4] The deficiency in income tax appears to have been based principally (if not exclusively) on respondent's determination that petitioner underreported tip income for 1995.

balance due, informing them that they had a liability for 1995 and requesting that they pay that liability. Petitioner and his wife failed to pay the amount owing.

On October 15, 1999, respondent received from petitioner a Form 1040X, Amended U.S. Individual Income Tax Return, for 1995.[5] On line 1 of the Form 1040X, petitioner reduced adjusted gross income from $41,874, the amount reported on his original return, to "0". Similarly, on line 10 of the Form 1040X, petitioner reduced his tax liability from $4,143, the amount reported on his original return, to "0", and on line 23, he asked that $4,143 be refunded to him. By way of explanation, petitioner wrote as follows in Part II of the Form 1040X:

> LINE #1: Due to ignorance, we reported as "income" sources of income as being "income" itself, when in fact, we had no statutory income tax to report.
>
> LINE #10: Apart from #1 above, we also had no statutory liability with respect to income taxes, and pursuant to Code sec. 31(a)(1), we have a Constitutional right to have the wage tax imposed in sec. 3402(a)(1) refunded since it represents an unapportioned, direct tax on wages and thus would be unconstitutional if we could not have them refunded. Because of the misleading caption on sec. 3402(a)(1), we did not realize that what was deducted from our pay was not income tax, but a direct tax on our wages.

Petitioner attached to the Form 1040X a two-page typewritten statement that stated, in part, as follows:

---

[5] Although the Form 1040X listed both the names of petitioner and his wife, it was signed only by petitioner.

I, Christopher Kiley, am submitting this as part of my amended 1995 income tax return, even though I know that no section of the Internal Revenue Code:

1) Establishes an income tax "liability" * * *;

2) Provides that income taxes "have to be paid on the basis of a return" * * *.

3) In addition to the above, I am filing even though the "Privacy Act Notice" as contained in a 1040 booklet clearly informs me that I am not required to file.  It does so in at least two places.

     a) In one place, it states that I need only file a return for "any tax" I may be "liable" for.  Since no Code Section makes me "liable" for income taxes, this provision notifies me that I do not have to file an income tax return.

       *    *    *    *    *    *    *

5) Please note, that my 1995 return also constitutes a claim for refund pursuant to Code Section 6402.

6) It should also be noted that I had "zero" income according to the Supreme Court's definition of income (See Note #1) * * * .

7) I am also putting the IRS on notice that my 1995 tax return and claim for refund does not constitute a "frivolous" return pursuant to Code Section 6702. * * *

8) Moreover, since no assessment for 1995 income taxes * * * has ever been made against me, the IRS has no legal basis to hold the $4143 of my money it is now holding for 1995 income taxes.

       *    *    *    *    *    *    *

10) In addition, don't notify me that the IRS is "changing" my return, since there is not [sic] statute that allows the IRS to do that. * * *

       *    *    *    *    *    *    *

*<u>NOTE #1:</u> The word "income" is not defined in the Internal Revenue Code. * * * But, as stated above, it

can only be a derivitive [sic] of corporate activity.
* * *

By letter dated November 10, 1999, respondent's Chief of the Examination Branch in the Ogden, Utah Service Center advised petitioner and his wife that the Form 1040X was a frivolous document and that "The position you have taken has no basis in law".

By letter dated January 7, 2000, petitioner replied to the foregoing letter, stating in part as follows:

> Your letter of 11/10/99 (attached) identifies you as being Chief, Examination Branch.  However, IRS Manual * * * defines the duties of the "examination branch," in part, as follows:

> "The Examination Branch administers an international examination program involving the selection and examination of all types of Federal tax returns filed with the Assistant Commissioner (International) ..."

> Since I am not involved in international commerce, and since I never filed tax returns with the Assistant Commissioner (International), and since I am not living abroad, nor engaged in making an offer and compromise, nor am I an IRS informant claiming a reward - I can find no provision in paragraph 1132.74 that would authorize you to contact me on **any** basis.  This, of course, means that I do not even have to comment further on your ludicrous, unauthorized and extortionary letter, but I will do so anyway - because I can not allow the fraud and deceit it contains to go un-addressed.

> * * * * * * *

> If I am wrong in my assumption that no provision of the Internal Revenue Code makes me "liable" for income taxes * * *, then please identify any such section for me.  I note that your new "Mission Statement" says that the IRS is supposed to help

taxpayers "understand and meet (their) tax responsibilities and by applying the *tax law* with integrity and fairness to all."  Well you can start off by showing me the "tax law" that makes me "liable" for income taxes, since I cannot find it on my own. * * *

> Constitutionally yours,
> /s/ Christopher Kiley
> Law Abiding Citizen

By letter dated February 4, 2000, respondent formally denied the claim for refund made by petitioner in his Form 1040X.

B.  <u>Petitioner's Tax Liability for 1997</u>

On April 17, 1999, petitioner and his wife submitted to respondent a joint Form 1040, U.S. Individual Income Tax Return, for the taxable year 1997.  On the Form 1040, petitioner listed his occupation as "cashier"; petitioner's wife did not list her occupation.

Petitioner and his wife entered zeros on every line of the income portion of the Form 1040, specifically including line 7 for wages and tips, line 22 for total income, lines 33 and 34 for adjusted gross income, and line 39 for taxable income. Petitioner and his wife also entered zeros on line 40 for tax and on line 56 for total tax.  Petitioner and his wife then claimed a refund in the amount of $731.22, which was equal to the amount of Federal income tax that had been withheld from petitioner's wages, as discussed in the following paragraph.

Petitioner and his wife attached to their Form 1040 a Form W-2, Wage and Tax Statement, disclosing the payment of wages to petitioner during 1997. The Form W-2 was from Palace Station Hotel and Casino in Las Vegas, Nevada; it disclosed the payment of wages to petitioner in the amount of $19,989.32 and the withholding of Federal income tax in the amount of $731.22.

Petitioner and his wife also attached to their Form 1040 a two-page typewritten statement that began, as follows:

> I, Christopher Kiley, am submitting this as a part of my 1997 income tax return, even though I know that no section of the Internal Revenue Code:

The rest of the statement was essentially the same as the statement attached to petitioner's Form 1040X for 1995. See supra A.

By letter dated May 21, 1999, respondent's Chief of the Examination Branch in the Ogden, Utah Service Center advised petitioner and his wife that "the information you sent", i.e., their Form 1040 for 1997 (as well as their Form 1040 for 1998, see infra C), "is frivolous and your position has no basis in law."

By letter dated June 19, 1999, petitioner replied to the foregoing letter. Although petitioner's letter was much lengthier than his previously described letter dated January 7, 2000 (see supra A), the tenor of the two letters was the same.

By notice dated February 25, 2000, respondent determined a deficiency in the Federal income tax of petitioner and his wife for 1997 in the amount of $2,951, together with an accuracy-related penalty under section 6662(a) and (b)(1) in the amount of $247.16.[6]  No petition for redetermination was filed with the Court.  See sec. 6213(a).  Accordingly, on August 7, 2000, respondent assessed the deficiency, together with the accuracy-related penalty and statutory interest.  On that same day, respondent sent petitioner and his wife a statutory notice of balance due, informing them that they had a liability for 1997 and requesting that they pay that liability.  Petitioner and his wife failed to pay the amount owing.

C.  Petitioner's Tax Liability for 1998

On April 15, 1999, petitioner and his wife submitted to respondent a joint Form 1040, U.S. Individual Income Tax Return, for the taxable year 1998.  On the Form 1040, petitioner listed

---

[6]  The deficiency in income tax was based on respondent's determination that petitioner and his wife received, but failed to report: (1) Wages in the amount of $19,989 from Palace Station Hotel and Casino; (2) wages in the amount of $16,419 from Lucky Stores; (3) wages in the amount of $759 from UFCE Local 711; (4) gambling winnings in the amount of $1,429 from Palace Station Hotel and Casino; and (5) a capital gain in the amount of $1,250 from Chicago Trust.

We note that respondent has credited petitioner and his wife for the amount withheld from wages insofar as their ultimate tax liability is concerned.  However, we note further that the determination of a statutory deficiency does not take such amount into account.  See sec. 6211(b)(1).

his occupation as "cashier", and petitioner's wife listed her occupation as "unemployed".

Petitioner and his wife entered zeros on every line of the income portion of the Form 1040, specifically including line 7 for wages and tips, line 22 for total income, lines 33 and 34 for adjusted gross income, and line 39 for taxable income. Petitioner and his wife also entered zeros on line 40 for tax and on line 56 for total tax. Petitioner and his wife then claimed a refund in the amount of $1,178.72, which was equal to the amount of Federal income tax that had been withheld from petitioner's wages, as discussed in the following paragraph.

Petitioner and his wife attached to their Form 1040 a Form W-2, Wage and Tax Statement, disclosing the payment of wages to petitioner during 1998. The Form W-2 was from Palace Station Hotel and Casino in Las Vegas, Nevada; it disclosed the payment of wages to petitioner in the amount of $18,823.15 and the withholding of Federal income tax in the amount of $1,178.72.

Petitioner and his wife also attached to their Form 1040 a two-page typewritten statement that began, as follows:

> I, Christopher Kiley, am submitting this as a part of my 1998 income tax return, even though I know that no section of the Internal Revenue Code:

The rest of the statement was essentially the same as the statement attached to petitioner's Form 1040X for 1995 and Form 1040 for 1997. See supra A and B.

As previously stated (see supra B), by letter dated May 21, 1999, respondent's Chief of the Examination Branch in the Ogden, Utah Service Center advised petitioner and his wife that "the information you sent"; i.e., their Form 1040 for 1998, "is frivolous and your position has no basis in law."  Also as previously stated (see supra B), by letter dated June 19, 1999, petitioner replied to the foregoing letter.  Although petitioner's letter was much lengthier than his previously described letter dated January 7, 2000 (see supra A), the tenor of the two letters was the same.

By notice dated February 25, 2000, respondent determined a deficiency in the Federal income tax of petitioner and his wife for 1998 in the amount of $16,174, together with an accuracy-related penalty under section 6662(a) and (b)(1) in the amount of $3,830.06.[7]  No petition for redetermination was filed with the Court.  See sec. 6213(a).  Accordingly, on August 7, 2000,

[7] The deficiency in income tax was based on respondent's determination that petitioner and his wife received but failed to report: (1) Wages in the amount of $14,466 from Lucky Stores, and (2) a capital gain in the amount of $83,550.  In determining the deficiency, it would appear that respondent failed to consider the Form W-2 issued by Palace Station Hotel and Casino reporting the payment of wages to petitioner in the amount of $18,823.15, as discussed in the text.  If this were the case, the deficiency in income tax and the accuracy-related penalty were understated.

We note that respondent has credited petitioner and his wife for the amount withheld from wages insofar as their ultimate tax liability is concerned.  However, we note further that the determination of a statutory deficiency does not take such amount into account.  See sec. 6211(b)(1).

respondent assessed the deficiency, together with the accuracy-related penalty and statutory interest.  On that same day, respondent sent petitioner and his wife a statutory notice of balance due, informing them that they had a liability for 1998 and requesting that they pay that liability.  Petitioner and his wife failed to pay the amount owing.

D.  Respondent's Final Notices and Petitioner's Responses

On November 16, 2000, respondent mailed to petitioner and his wife a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing in respect of their outstanding tax liabilities for 1997 and 1998 (but not 1995).  Thereafter, on December 12, 2000, respondent received from petitioner a Form 12153, Request for a Collection Due Process Hearing.  Petitioner attached to the Form 12153 a 2-page typewritten statement and a copy of various Treasury regulations.

On April 28, 2001, respondent mailed to petitioner and his wife a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing (the final notice) in respect of their outstanding tax liabilities for 1995, 1997, and 1998.  The final notice stated that the total amount then due from petitioner and his wife was as follows:

| Year | Amount Due |
|------|-----------|
| 1995 | $511.71 |
| 1997 | 2,020.53 |
| 1998 | 22,451.65 |
| Total | 24,983.89 |

No later than May 27, 2001, respondent received from petitioner another Form 12153, Request for a Collection Due Process Hearing. Petitioner attached to this Form 12153 the same 2-page typewritten statement and exhibit that he attached to his previously filed Form 12153.[8]

The following passage from the statement attached to petitioner's Form 12153 reflects its tenor:

> It is clear that before any appeals officer can recommend the seizure of any property pursuant to Code Section 6331 certain elements have to be present. For one thing (pursuant to that statute) that person has to statutorily "liable to pay" the taxes at issue, and only after he "neglects or refuses to pay the same within 10 days after notice and demand," can his property be subject to seizure. Therefore, apart from the appeals officer having to identify the statute that makes me "liable to pay" the taxes at issue, he needs to have a copy of the "notice and demand" which I "neglected" and "refused" to pay. In addition, I can't be "liable" to pay an income tax, if the tax in question has never been assessed against me as required by Code Sections 6201 and 6203. So I will need to see a copy of the record of my assessments. And since (as provided by Code Section 6201(a)(1) and IRS Transaction Code 150) all assessments have to be based of filed returns, ***I will have to see a copy of the return which any claimed assessment is based.***

---

[8] As indicated in the text, neither Form 12153 was executed by petitioner's wife, nor did either purport to be filed on her behalf.

E. Respondent's Efforts To Schedule an Administrative Hearing

By letter dated October 23, 2001, an Appeals officer in respondent's Appeals Office in Albuquerque, New Mexico, scheduled an administrative hearing for petitioner on December 17, 2001, in Las Vegas, Nevada, the location closest to petitioner's residence in Pahrump, Nevada, in respect of the 3 taxable years in issue. The penultimate paragraph of the Appeals officer's letter stated as follows:

> **IF YOU FAIL TO APPEAR FOR THE HEARING:** This will be your only opportunity for a face-to-face hearing. If you cannot appear for the Hearing, I have scheduled a telephone Hearing for you on January 15, 2002 at 9:00 A.M. (MST). Please call me on the scheduled date and at the scheduled time if you cannot attend the face-to-face hearing. If I do not hear from you by the date scheduled for the telephone hearing, your hearing will consist of a review of your administrative file and all correspondence provided by you.

The Appeals officer included with his October 23, 2001, letter Form 4340, Certificate of Assessments, Payments and Other Specified Matters, for each of the 3 taxable years in issue.

Petitioner did not attend the December 17, 2001, administrative hearing in Las Vegas, Nevada, nor did petitioner participate in a telephone conference on January 15, 2002.

F. Respondent's Notice of Determination

On February 14, 2002, respondent's Appeals Office issued to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 with regard to his tax

liabilities for 1995, 1997, and 1998.  In the notice, the Appeals Office concluded that respondent's determination to proceed with collection by way of levy should be sustained.

G.  Petitioner's Petition and Amended Petition

On March 25, 2002, petitioner filed with the Court a Petition for Lien or Levy Action seeking review of respondent's notice of determination.[9]  Thereafter, on June 19, 2002,  an Amended Petition for Lien or Levy Action was filed.

In the amended petition, petitioner challenges "the appropriateness of (the) collection action" and "the existence of the underlying liability".  Petitioner also alleges: (1) The Appeals officer failed to obtain verification from the Secretary that the requirements of applicable law or administrative procedure were met as required under section 6330(c)(1); (2) petitioner never received notice and demand for payment for the liabilities in issue; and (3) no "valid" assessment was ever made.  Finally, petitioner alleges that he never received a "valid notice of deficiency" for any of the years in issue.  The amended petition contains no facts in support of any of the foregoing allegations.

H.  Respondent's Motion For Summary Judgment

As stated, respondent filed a Motion For Summary Judgment

---

[9]  At the time that the petition was filed, petitioner resided in Pahrump, Nevada.

And To Impose A Penalty Under I.R.C. Section 6673. Respondent also filed a Declaration in support of the motion. Attached to the Declaration are Forms 4340, Certificate of Assessments, Payments and Other Specified Matters, for petitioner's accounts for 1995, 1997, and 1998. Together, the Forms 4340 show, inter alia: (1) Assessments on February 9, 1998, in respect of the taxable year 1995, and on August 7, 2000, in respect of the taxable years 1997 and 1998; (2) the issuance of notices of balance due on the dates of assessment for the corresponding taxable year(s); and (3) the issuance of the final notice of intent to levy on April 28, 2001. See supra A through D.

Petitioner filed an Objection to respondent's motion, disagreeing with the imposition of any penalty under section 6673. Thereafter, pursuant to notice, respondent's motion was called for hearing at the Court's motions session in Washington, D.C. Petitioner did not attend the hearing, nor did he submit any written statement pursuant to Rule 50(c).

Discussion

Section 6331(a) provides that if any person liable to pay any tax neglects or refuses to pay such tax within 10 days after notice and demand for payment, the Secretary is authorized to collect such tax by levy on the person's property. Section 6331(d) provides that at least 30 days before enforcing collection by levy on the person's property, the Secretary is

obliged to provide the person with a final notice of intent to levy, including notice of the administrative appeals available to the person.

Section 6330 generally provides that the Commissioner cannot proceed with collection by levy until the person has been given notice and the opportunity for an administrative review of the matter (in the form of an Appeals Office hearing) and, if dissatisfied, with judicial review of the administrative determination. See Davis v. Commissioner, 115 T.C. 35, 37 (2000); Goza v. Commissioner, 114 T.C. 176, 179 (2000).

Section 6330(c) prescribes the matters that a person may raise at an Appeals Office hearing. In sum, section 6330(c) provides that a person may raise collection issues such as spousal defenses, the appropriateness of the Commissioner's intended collection action, and possible alternative means of collection. Section 6330(c)(2)(B) provides that the existence and amount of the underlying tax liability can be contested at an Appeals Office hearing only if the person did not receive a notice of deficiency for the tax in question or did not otherwise have an earlier opportunity to dispute the tax liability. See Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, supra. Section 6330(d) provides for judicial review of the administrative determination in the Tax Court or a Federal District Court, as may be appropriate.

A.  Summary Judgment

In the amended petition, petitioner challenges "the existence of the underlying tax liability".  Respondent contends that petitioner is barred under section 6330(c)(2)(B) from challenging the existence or amount of his underlying tax liabilities in this collection review proceeding because petitioner received notices of deficiency for the taxes in question.  Respondent deduces the  factual predicate for this contention from petitioner's failure to deny receiving notices of deficiency; rather, petitioner has only denied receiving "valid" notices of deficiency.  See Rennie v. Commissioner, T.C. Memo. 2002-296 (taxpayer's denial of receiving "legal notice of deficiency" did not mean that taxpayer failed to receive notice of deficiency); Schmith v. Commissioner, T.C. Memo. 2002-252 (taxpayer's denial of receiving "valid notice of deficiency" did not mean that taxpayer failed to receive notice of deficiency); see also Nestor v. Commissioner, 118 T.C. 162, 165-166 (2002) (section 6330(c)(2)(B) bars a taxpayer from challenging the existence or amount of the taxpayer's underlying tax liability in a collection review proceeding if the taxpayer received a notice of deficiency and disregarded the opportunity to file a petition for redetermination with this Court).

Rule 121(d) provides in relevant part as follows:

When a motion for summary judgment is made and supported as provided in this Rule, an adverse party

may not rest upon the mere allegations or denials of such party's pleading, but such party's response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, then a decision, if appropriate, may be entered against such party.

In the amended petition, petitioner does not indicate on what basis he challenges "the existence of the underlying liability".  His failure to do so is contrary to Rule 331(b)(5), requiring "Clear and concise lettered statements of the facts on which the petitioner bases each assignment of error."  Cf. Parker v. Commissioner, 117 F.3d 785 (5th Cir. 1997); White v. Commissioner, T.C. Memo. 1997-459.  Petitioner's failure to do so after the filing of respondent's motion for summary judgment is contrary to Rule 121(d) and justifies summary judgment for respondent on this issue.[10]

Petitioner also challenges "the appropriateness of (the) collection action".  Again, however, he fails to allege any facts in support of this assignment of error.  See Rule 331(b)(5).  Moreover, he fails to suggest any alternative means of collection.  See, e.g., sec. 6330(c)(2)(A)(iii).  As before, petitioner's failure to do so after the filing of respondent's motion for summary judgment is contrary to Rule 121(d) and

---

[10]  Even if petitioner were permitted to challenge his underlying tax liabilities, it is clear that the arguments he has advanced (see supra Background, A through D) are frivolous and groundless.  E.g., Keene v. Commissioner, T.C. Memo. 2002-277.

justifies summary judgment for respondent on this issue.

We likewise reject petitioner's argument that the Appeals officer failed to obtain verification from the Secretary that the requirements of all applicable laws and administrative procedures were met as required by section 6330(c)(1). The record shows that the Appeals officer obtained and reviewed transcripts of petitioner's accounts for 1995, 1997, and 1998.

Federal tax assessments are formally recorded on a record of assessment. Sec. 6203. "The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment." Sec. 301.6203-1, Proced. & Admin. Regs.

Section 6330(c)(1) does not require the Commissioner to rely on a particular document (e.g., the summary record itself rather than transcripts of account) to satisfy the verification requirement imposed therein. Roberts v. Commissioner, 118 T.C. 365, 371 n.10 (2002); Standifird v. Commissioner, T.C. Memo. 2002-245; Weishan v. Commissioner, T.C. Memo. 2002-88; Lindsey v. Commissioner, T.C. Memo. 2002-87; Tolotti v. Commissioner, T.C. Memo. 2002-86; Duffield v. Commissioner, T.C. Memo. 2002-53; Kuglin v. Commissioner, T.C. Memo. 2002-51. In this regard, we observe that the Forms 4340 furnished to petitioner by the Appeals officer and attached to respondent's Declaration

contained all the information prescribed in section 301.6203-1, Proced. & Admin. Regs.  See Weishan v. Commissioner, supra; Lindsey v. Commissioner, supra; Tolotti v. Commissioner, supra; Duffield v. Commissioner, supra; Kuglin v. Commissioner, supra.[11]

Petitioner has not alleged any irregularity in the assessment procedure that would raise a legitimate question about the validity of the assessments or the information contained in the Forms 4340.  See Davis v. Commissioner, 115 T.C. at 41; Mann v. Commissioner, T.C. Memo. 2002-48.  Accordingly, we hold that the Appeals officer satisfied the verification requirement of section 6330(c)(1).  Cf. Nicklaus v. Commissioner, 117 T.C. 117, 120-121 (2001).

Petitioner also contends that he never received a notice and demand for payment of his tax liabilities for 1997 and 1998.  The requirement that the Secretary issue a notice and demand for payment is set forth in section 6303(a), which provides in pertinent part:

> SEC. 6303(a). General Rule.--Where it is not otherwise provided by this title, the Secretary shall, as soon as practicable, and within 60 days, after the

---

[11] To the extent that petitioner may be arguing that the Appeals officer failed to provide him with a copy of the verification, we note that sec. 6330(c)(1) does not require that the Appeals officer provide the taxpayer with a copy of the verification at the administrative hearing.  Nestor v. Commissioner, 118 T.C. 162, 166 (2002); sec. 301.6330-1(e)(1), Proced. & Admin Regs.  In any event, both the Appeals officer and respondent's counsel provided petitioner with Forms 4340 for the 3 taxable years in issue.

> making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof.
> * * *

In particular, the Forms 4340 show that respondent sent petitioner notices of balance due on the same dates that respondent made assessments against petitioner for the taxes and accuracy-related penalties determined in the notices of deficiency.  A notice of balance due constitutes a notice and demand for payment within the meaning of section 6303(a).  See, e.g., Hughes v. United States, 953 F.2d 531, 536 (9th Cir. 1992); Schaper v. Commissioner, T.C. Memo. 2002-203; Weishan v. Commissioner, supra; see also Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993).  In addition, other notices were sent to petitioner, at least one of which (the final notice, discussed supra D) petitioner received; likewise, petitioner received the Forms 4340.  Such notices and forms were sufficient to constitute notice and demand within the meaning of section 6303(a) because they informed petitioner of the amount owed and requested payment.  Standifird v. Commissioner, supra; Hack v. Commissioner, T.C. Memo. 2002-244; Hack v. Commissioner, T.C. Memo. 2002-243; see Elias v. Connett, 908 F.2d 521, 525 (9th Cir. 1990) ("The form on which a notice of assessment and demand for payment is made is irrelevant as long as it provides the taxpayer with all the information required under 26 U.S.C. § 6303(a).").

Finally, petitioner has failed to raise a spousal defense.

Such potential issue is now deemed conceded.  Rule 331(b)(4).  In the absence of a valid issue for review, we conclude that respondent is entitled to judgment as a matter of law sustaining the notice of determination dated February 14, 2002.

B.  Imposition of a Penalty Under Section 6673

We turn now to that part of respondent's motion that moves for the imposition of a penalty on petitioner under section 6673.

As relevant herein, section 6673(a)(1) authorizes the Tax Court to require a taxpayer to pay to the United States a penalty not in excess of $25,000 whenever it appears that proceedings have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceeding is frivolous or groundless.  The Court has indicated its willingness to impose such penalty in lien and levy cases, Pierson v. Commissioner, 115 T.C. 576, 580-581 (2000), and has in fact imposed a penalty in a number of such cases.[12]

We are convinced that petitioner instituted the present proceeding primarily for delay.  In this regard, it is clear that petitioner regards this proceeding as nothing but a vehicle to

---

[12]  E.g., Craig v. Commissioner, 119 T.C. ___ (2002) (imposing a penalty in the amount of $2,500); Roberts v. Commissioner, 118 T.C. 365 (2002) (imposing a penalty in the amount of $10,000); Rennie v. Commissioner, T.C. Memo. 2002-296 (imposing a penalty in the amount of $1,500); Tornichio v. Commissioner, T.C. Memo. 2002-291 (imposing a penalty in the amount of $12,500); Keene v. Commissioner, T.C. Memo. 2002-277 (imposing a penalty in the amount of $5,000), and numerous other cases cited therein at n.14.

protest the tax laws of this country and to espouse his own misguided views, which we regard as frivolous and groundless. E.g., Tolotti v. Commissioner, T.C. Memo. 2002-86.  In short, having to deal with this matter wasted the Court's time, as well as respondent's, and taxpayers with genuine controversies may have been delayed.

Under the circumstances, we shall grant that part of respondent's motion that moves for the imposition of a penalty in that we shall impose a penalty on petitioner pursuant to section 6673(a)(1) in the amount of $5,000.

C. Conclusion

We have considered all of petitioner's arguments that are not discussed herein, and we find them to be without merit and/or irrelevant.

In order to give effect to the foregoing,

An appropriate order granting respondent's motion and decision for respondent will be entered.